IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| COLORQUICK, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:09-cv-323-LED |
| | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| VISTAPRINT LIMITED, and | ) | |
| OFFICEMAX INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS VISTAPRINT LIMITED AND OFFICEMAX INCORPORATED'S
JOINT MOTION TO TRANSFER VENUE**

Pursuant to 28 U.S.C. § 1404(a), Defendants Vistaprint Limited ("Vistaprint Ltd.") and OfficeMax Incorporated ("OfficeMax") (collectively, "Defendants") jointly move to transfer this action to the U.S. District Court for the District of Massachusetts. In support of their motion, Defendants state as follows:

**I.   INTRODUCTION**

ColorQuick, L.L.C. ("ColorQuick" or "Plaintiff"), a New Jersey-based company with no material ties to the Eastern District of Texas, filed this patent infringement action in a judicial district where no material documents are located, where no material witnesses are located, and where none of the parties, including ColorQuick, have any significant contacts relevant to this case. In stark contrast, the vast majority of material documents and witnesses are located in or near Boston, Massachusetts, making the District of Massachusetts a clearly more convenient forum than the Eastern District of Texas.

The documents and witnesses with knowledge concerning the allegedly infringing web-based digital print services (i.e., software) offered by Vistaprint Ltd. and OfficeMax are

located in or near the District of Massachusetts. First and foremost, information concerning the research, design, testing, operation, and maintenance of the accused software is in the possession, custody or control of Vistaprint Ltd., its U.S. subsidiary, or its U.S. subsidiary's current and former employees located in Massachusetts. Second, the inventor and the attorney who prosecuted the patent-in-suit are located in the Northeast (in or around Philadelphia). Third, material documents relevant to damages and the commercial success (or lack thereof) of the alleged invention are located in Massachusetts or at ColorQuick in the Northeast.

Accordingly, litigating this regional dispute in the Northeast, namely in the District of Massachusetts, is clearly more convenient than litigating in the Eastern District of Texas. *See, e.g., Partsriver, Inc. v. Shopzilla, Inc.*, No. 2:07-CV-440, 2009 WL 279110, *2-*3 (E.D. Texas Jan. 30, 2009) (stating that where many witnesses for both the plaintiff and defendants resided in California and Washington, and when many documents relating to the case were located in California, then the case "is regional and would be therefore be more conveniently handled by the Northern District of California."); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

## II. FACTS

### A. ColorQuick and the Patent-in-Suit.

ColorQuick is a "New Jersey limited liability company," and has a "principal place of business [in]…Pennsauken, New Jersey." Compl. at ¶ 1. Pennsauken is a suburb of Philadelphia, Pennsylvania, and is located across the Delaware River, six miles from the center of Philadelphia. *See* Ex. A, Declaration of Heather Faltin In Support of Defendants' Joint Motion to Transfer Venue ("Faltin Decl.") at ¶ 2.

ColorQuick asserts it is the owner of all rights, title and interest in U.S. Patent No.

6,839,149 (the "'149 Patent"), entitled "Preparation of Production Data for a Print Job Using a Still Image Proxy of a Page Description Language Image File." *See* Compl. at ¶¶ 6-7. The inventor of the '149 patent is listed as Jeremy C. Herr ("Herr") from Jenkintown, Pennsylvania. *See* Compl., Ex. A. Jenkintown is fourteen miles from Philadelphia. Faltin Decl. at ¶ 3. On information and belief, Mr. Herr currently resides in Elkins Park, Pennsylvania, a suburb located nine miles from the center of Philadelphia. *Id.* at ¶¶ 4, 5. The attorney who prosecuted the '149 Patent is Clark Jablon. *Id.* at ¶ 6. On information and belief, Mr. Jablon currently works in Philadelphia, Pennsylvania. *Id.*

**B.     Vistaprint and its Accused Digital Print Service.**

Vistaprint Ltd. owns and operates the website www.vistaprint.com (the "Website"), which is hosted on servers owned by Vistaprint Ltd. located in Bermuda. *See* Exh. B, Declaration of Donald Nelson In Support of Defendants' Joint Motion to Transfer Venue, ("Nelson Decl.") at ¶ 4. Via the Website, and other websites directed to countries around the world (such as www.vistaprint.co.uk and www.vistaprint.fr), Vistaprint Ltd. offers online Internet users web-based printing services to customers around the world. *Id.* at ¶ 5. For example, a customer, using his or her work or home computer, can access Vistaprint Ltd.'s computers in Bermuda to design and purchase customized printed products, such as business cards, holiday cards, and brochures. *Id.* Vistaprint Ltd. has no employees. *Id.* at ¶ 6.

Vistaprint USA, Inc. ("Vistaprint USA") is a wholly-owned subsidiary of Vistaprint Ltd. Nelson Decl. at ¶ 1. Vistaprint USA has approximately 550 employees located exclusively in Lexington, Massachusetts, and provides services to Vistaprint Ltd., including website design, technical, support, marketing and accounting services. *Id.* at ¶ 7. Since in or around 2000, essentially all research, design, and development work relating to the Website has taken place in

Massachusetts. *Id.* at ¶ 9. Vistaprint USA, however, does not perform the actual printing of products for Vistaprint Ltd.; that function is performed outside the U.S. in manufacturing facilities in Canada and the Netherlands. *Id.*

Vistaprint is accused of infringing the '149 Patent by offering digital print services through the Website in Bermuda. *See* Compl., ¶ 9. Current and former employees of Vistaprint USA located in Massachusetts have knowledge of the design, development, operation and maintenance of the web-based printing services offered through the Website. Nelson Decl. at ¶¶ 10, 17 (detailing specific Massachusetts-based witnesses). In addition, current and former employees of Vistaprint USA located in Massachusetts have knowledge of Vistaprint's revenues, expenses and other financial information relating to the operation of the Website. *Id.* at ¶¶ 10, 18. Essentially all documents relating to the design, development, operation and maintenance of the Website are located in Massachusetts, as are essentially all financial documents related to Website operations. *Id.* at ¶ 11.[1]

Vistaprint USA and Vistaprint Ltd. (and all other Vistaprint entities) do not maintain a designated agent for service of process in Texas, have no employees in Texas, have no office in Texas, and have no documents in Texas. *Id.* at ¶¶ 3, 8.

### C. OfficeMax and its Impress® Digital Print Services.

Defendant OfficeMax is headquartered in Naperville, Illinois, a suburb of Chicago. *See* Ex. C, Declaration of Tom Rau In Support of Defendants' Joint Motion to Transfer Venue ("Rau Decl.") at ¶ 2. OfficeMax is accused of infringing the '149 Patent by offering digital print services, namely its "ImPress® digital print services." *See* Compl. at ¶ 10. ImPress is an

---

[1] One of Defendants' many defenses in this action is that there can be no infringement because the accused method steps are not all performed within the U.S., and the accused apparatuses are not located within the U.S., as required by 35 U.S.C. § 271. This, however, does not change the fact that the relevant witnesses and documents are largely in Massachusetts.

OfficeMax business services department offering a full range of printing, copying, finishing and design services. Rau Decl. at ¶ 3. ImPress offers in store printing and copying services, scanning, and other document processing services at OfficeMax store locations. *Id.* OfficeMax also operates in store kiosks and a website—both under the ImPress brand—that provide product design services to customers through a computer interface. Rau Decl. at ¶ 4. OfficeMax operates 937 stores in the United States, including ten stores in the District of Massachusetts and nine stores in the Eastern District of Texas. Rau Decl., ¶ 8.

Critical for purposes of this transfer motion, the relevant OfficeMax product design services are operated by Vistaprint Ltd. for OfficeMax. Rau Decl. at ¶ 4. Based on a strategic partnership agreement between OfficeMax and Vistaprint Ltd., the Defendants have implemented an OfficeMax-branded version of Vistaprint Ltd.'s web-based printing solution. *Id.* and Nelson Decl. at ¶ 12. Thus, OfficeMax customers access **Vistaprint Ltd.'s** digital print services through kiosks set up in OfficeMax stores or through the OfficeMax website. Rau Decl. at ¶ 5 and Nelson Decl. at ¶ 13.

The relevant OfficeMax services connect directly to Vistaprint Ltd.'s website via the Internet, and online digital print services are performed by a Vistaprint Ltd. subsidiary. Rau Decl. at ¶ 5 and Nelson Decl. at ¶ 13. Accordingly, essentially all technical information concerning the functionality of the accused software related to the relevant OfficeMax services, including essentially all documents relating to its design, development, operation and maintenance are located in Massachusetts. Rau Decl., ¶ 6 and Nelson Decl., ¶ 14. Moreover, essentially all testimony about the design, development, operation and maintenance of the relevant OfficeMax services will come from former and current employees of Vistaprint USA in Massachusetts, and not from OfficeMax. Rau Decl., ¶ 7 and Nelson Decl., ¶ 15.

## III. LEGAL STANDARD

The Court may transfer this action to any district where it might have been brought""[f]or the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).  In the Fifth Circuit, a motion to transfer should be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by plaintiff.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)("*Volkswagen II*").  The Fifth Circuit applies "public" and "private" factors for determining forum *non conveniens*.  *See In re TS Tech USA Corp.*, 551 F.3d at 1319.

The private interest factors for the Court's consideration include:  (1) the relative ease of sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)("*Volkswagen I*");  Accord *In re Genentech*, 566 F.3d 1338, 1342 (Fed. Cir. 2009);  *In re TS Tech USA Corp.*, 551 F.3d at 1319.

The public interest factors include:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law.  *Volkswagen I*, 371 F.3d at 203; Accord *In re Genentech*, 566 F.3d at 1342;  *In re TS Tech USA Corp.*, 551 F.3d at 1319.

Under the circumstances of this case, and viewed as a whole, the public and private factors clearly weigh in favor of transfer.  Because the District of Massachusetts is "clearly more convenient" than the venue chosen by Plaintiff, the Court should transfer this litigation.

**IV.     ARGUMENT**

    **A.     Venue in the District of Massachusetts is Proper.**

This largely regional dispute could have been brought in the District of Massachusetts. Venue requirements are satisfied in patent infringement cases "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Given this broad standard, this suit could have been initiated in the District of Massachusetts because Vistaprint offers its web-based digital print services via the Website to persons around the United States, including in the District of Massachusetts. Nelson Decl., ¶ 16. Moreover, this suit could have been initiated in the District of Massachusetts against OfficeMax because it offers ImPress digital print services over the Internet to persons around the United States (including in Massachusetts), and because OfficeMax operates ten stores in the District of Massachusetts that offer the accused Impress digital print services. Rau Decl., ¶¶ 8, 9.

    **B.     The Private Interest Factors Clearly Weigh in Favor of Transfer to the District of Massachusetts.**

        **1.     The Relative Ease of Access to Sources of Proof Favors Transfer to the District of Massachusetts.**

            **a.     The bulk of the relevant evidence is in Massachusetts.**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 330 (E.D.N.Y. 2006).

Here, the bulk of the documents and sources of proof relevant to this case are undisputedly located in the District of Massachusetts. As described above, essentially all documents relevant to the design, development, testing, operation, and maintenance of Vistaprint's and OfficeMax's relevant digital print services are located in Massachusetts at

Vistaprint's U.S. operations. Nelson Decl. at ¶ 11-14; Rau Decl. at ¶ 6.[2] Thus, this factor clearly weighs in favor of transfer to the District of Massachusetts. *See, e.g., Fujitsu Ltd. v. Tellabs, Inc.,* 639 F.Supp.2d 761 (E.D. Tex. Jul. 07, 2009) (finding access to sources of proof weighed in favor of transfer where "the remaining documents undisputedly material to this litigation are located in [transferee forum]").

### b. Other evidence is near Massachusetts, and there is no material evidence in or near Texas.

Other relevant evidence is located in or around Philadelphia, Pennsylvania, a mere 300 miles or so from Boston, Massachusetts. For example, ColorQuick is located in the suburbs of Philadelphia, and may possess evidence relevant to the commercial success (or lack thereof) of the alleged patented invention, as well as information relating to damages (such as an alleged reasonable royalty based on past licenses for the patent-in-suit). The inventor, who resides in the suburbs of Philadelphia, possesses evidence relevant to the prior art, conception, reduction to practice, and best mode for practicing the alleged invention, as well as information relevant to the prosecution of the patent-in-suit. The prosecuting patent attorney, who works in Philadelphia, will have evidence regarding the prosecution of the patent-in-suit. Thus, the availability of sources of proof clearly weigh in favor of transfer to the District of Massachusetts. *See In re TS Tech USA Corp.*, 551 F.3d at 1321 (litigating in Ohio was most convenient since all the parties, and thus all the evidence, was located within roughly 300 miles of the Southern District of Ohio).

In stark contrast to the evidence located in or near the District of Massachusetts, Vistaprint and OfficeMax are not aware of **any** material evidence (or material witnesses) that are

---

[2] It is irrelevant to this factor whether the relevant documents are in electronic or hard-copy format (or both formats). "[T]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. *See also In re TS Tech USA Corp.*, 551 F.3d at 1321; *In re Genentech*, 566 F.3d at 1342.

located in the Eastern District of Texas. *See generally id.* at 1321 (holding that where "the vast majority of physical and documentary evidence relevant to this case will be found in Ohio, Michigan and Canada, and none of the evidence is located in Texas," then Ohio is a "far more conveniently located forum" then Texas); *Partsriver, Inc.*, 2009 WL 279110 at*2-*3 (stating that where many witnesses for both the plaintiff and defendants reside in California and Washington, and where many documents relating to the case are located in California, then the case "is regional and would be therefore be more conveniently handled by the Northern District of California.").

### 2. The Convenience of the Witnesses and Parties Favor Transfer to the District of Massachusetts .

In a venue analysis, "the most important factor considered is whether key fact witnesses will be substantially inconvenienced if the court should deny transfer." *Mitel Networks Corp. v. Shoretel,* No. 2:07-cv-269, 2008 WL 901249, at *2 (E.D. Tex. Mar. 31, 2008)(finding convenience of witnesses "in or around" transferee district favored transfer). Accord *In re Genentech*, 566 F.3d at 1342 ("The convenience of the witnesses is probably the single most important factor in a transfer analysis")(citation omitted). As described above, this case will prominently involve the testimony of party and subsidiary employees and third party witnesses who live or have residences in or near the District of Massachusetts, and for whom the Eastern District of Texas is clearly an inconvenient forum. *See In re TS Tech USA Corp.*, 551 F.3d at 1321 (litigating in Ohio was most convenient since all the parties was located within roughly 300 miles of the Southern District of Ohio).

"[I]t generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home." *In re Genentech*, 566 F.3d at 1343 (Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 317). "Additional distance [from home] means more travel time;

additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* (quotations omitted). Thus, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05.

There are ***at least*** seven specific witnesses in the District of Massachusetts who have knowledge of facts relevant to this case, including knowledge concerning the design, development, testing, operation and maintenance of the relevant digital print services offered by Vistaprint and OfficeMax. Nelson Decl. at ¶¶ 10, 18. It imposes substantial burden and expense to require these witnesses to travel to Texas.

Moreover, there are also at least three witnesses in or around Philadelphia—the inventor, the prosecuting patent attorney, and ColorQuick—who have knowledge of facts relevant to this case, including knowledge concerning any alleged commercial success of the patented invention, knowledge concerning the conception, reduction to practice, best mode and prosecution of the patent-in-suit, and knowledge concerning any alleged damages. Philadelphia is only 300 miles from Boston, yet 1400 miles from Tyler. Witnesses from or near Philadelphia have convenient access to Boston, and can make the round-trip the same day. For example, there are numerous non-stop flights to and from Boston and Philadelphia every business day, and there also is convenient Amtrak speed rail service that makes nine trips between Boston and Philadelphia every business day. Faltin Decl., ¶ 8. Put simply, traveling between Boston and Philadelphia is significantly less burdensome and expensive than all parties and witnesses traveling to the Eastern District of Texas. *See, generally, EIcommerce.com, Inc. v. SAP AG et al.*, No. 2:07-cv-


383 (E.D. Tex. Sept. 28, 2009) (granting motion to transfer to the District of Pennsylvania where parties were Massachusetts and Pennsylvania-based entities); *See In re TS Tech USA Corp.*, 551 F.3d at 1321 (litigating in Ohio was most convenient since all the parties was located within roughly 300 miles of the Southern District of Ohio).[3]

In stark contrast, there are **no witnesses** with knowledge of material facts in the Eastern District of Texas. Tyler is approximately 1,400 miles away from Philadelphia and 1,700 miles from Boston. Faltin Decl., at ¶ 11. It will be substantially more convenient for the ColorQuick witnesses to travel 300 miles to Boston, and for the Vistaprint witnesses to attend trial locally, than to have **all** the material witnesses travel across the country to Tyler to testify.[4] This is particularly true in light of the Fifth Circuit's "100 mile" rule, which notes that the inconvenience to witnesses "increases in direct relationship to the additional distance to be traveled." *Volkswagen I,* 371 F.3d at 204-05. This factor weighs significantly in favor of transfer.

### 3. The Availability of Compulsory Process Favors Transfer to the District of Massachusetts.

A district court can only issue a subpoena to compel the attendance of witnesses within its judicial district or outside the district but within 100 miles of the place specified for the deposition. *See* FED. R. CIV. P. 45(b)(2); *In re Genentech*, 566 F.3d at 1345. As discussed above, here there are numerous witnesses within the District of Massachusetts and no identified witnesses within the Eastern District of Texas. In addition to employees at Vistaprint's U.S. subsidiary, one of the designers of Vistaprint's early web-based printing services software, who

---

[3] A copy of the *EIcommerce.com, Inc.* order is attached as Exhibit D.

[4] OfficeMax's headquarters in Naperville, Illinois is approximately equidistant from Boston and Tyler. Faltin Decl., ¶ 9. However, there are numerous direct flights between Boston and Chicago every day, and thus it is more convenient for OfficeMax witnesses to travel to Boston than to Tyler. Faltin Decl. at ¶ 10; Rau Decl. at ¶ 11.

is no longer employed by Vistaprint but who maintains a residence in Massachusetts, possesses material information relevant to the design, development, operation and functionality of early (i.e. prior art to the patent-in-suit) versions of Vistaprint's online digital printing services. Nelson Decl. at ¶ 17. Similarly, Vistaprint USA's former Chief Financial Officer and former General Counsel, both of whom reside in Massachusetts, may have material information relevant to Plaintiff's alleged damages and a reasonable royalty for the patent-in-suit. *Id.* at ¶ 18. Given the limits of compulsory process, the fact that the District of Massachusetts is a venue with usable subpoena power over potential witnesses clearly weighs in favor of transfer. See, e.g., *In re Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### C. The Remaining Public and Private Interest Factors Do Not Favor Texas.

#### 1. The Local Interest In Having Localized Interests Decided At Home Does Not Favor Texas.

As stated above, Vistaprint and OfficeMax make the accused digital print services available via the Internet, and in the case of OfficeMax, also via its stores. *See supra*. The fact that OfficeMax has nine stores in the Eastern District of Texas does not mean that the Eastern District of Texas has a greater interest in this dispute than the District of Massachusetts, in which ten stores are located. As the Federal Circuit held in *In re TS Tech USA Corp*, where "the allegedly infringing [products] are sold throughout the United States,… the citizens of the Eastern District of Texas have no more or less a meaningful connection to this case than any other venue." *In re TS Tech USA Corp.*, 551 F.3d at 1321. *See also Volkswagen II,* 545 F.3d at 318 (stating that it "stretches logic" to say the local interest factor weighed against transfer because such rationale "could apply virtually to any judicial district or division in the United States.").

However, not only does Vistaprint and OfficeMax make the accused services available to persons in Massachusetts and Texas, the key defense witnesses and majority of relevant documentary evidence are located in Massachusetts. *See supra*. And, most of the Plaintiff's witnesses and documents appear to be located in or around Philadelphia, which is far closer to Massachusetts than to Texas. *Id.* Accordingly, the District if Massachusetts is the more convenient forum.

### 2. This Court's Previous Experience With the Patent-in-Suit Does Not Favor Texas.

This Court's previous experience with the patent-in-suit in *ColorQuick L.L.C. v. Eastman Kodak Company*, No. 6:06-CV-390, 2008 WL 5771324 (E.D. Tex. June 25, 2008) does not alter the conclusion that the District of Massachusetts is the more convenient forum. Numerous courts have held that the fact that a "court previously has hosted litigation involving some of the patents at issue is of minimal import." *Acer, Inc. v. Technology Properties Limited et al.*, Nos. C 08-877 JF (HRL), C 08-882, 2009 WL 279330, *2 (N.D. Cal. Feb. 4, 2009) (refusing to transfer case to a court with previous experience with the patents at issue). *See also ConnecTEL, LLC v. Cisco Sys., Inc.* No. 2:04-CV-396, 2005 WL 366966, at *3 (E.D. Tex. Feb. 16, 2005) (refusing to transfer the action to a court that had previously hosted litigation involving the patent-in-suit because "[t]he present case involves a different defendant and different products"); *Medimmune, LLC v. PDL Biopharma, Inc.*, No. C 08-5590 JF (HRL), 2009 WL 1011519, *3 (N.D. Cal. April 14, 2009) (same); *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008) (same).

This case involves different defendants and different accused products. Thus, "[b]ecause different products are at issue here, there is no guarantee that the same claims will be asserted against" Vistaprint and OfficeMax as were previously asserted against Eastman Kodak. *Acer,*

*Inc.,* 2009 WL 279330, *2. Moreover, even if the same claims were asserted here, Vistaprint and OfficeMax "still would be entitled to full briefing and argument because [they are] not collaterally estopped by the prior claim construction ruling." *Medimmune, LLC*, 2009 WL 1011519, at *3. *See also ConnecTEL, LLC,* 2005 WL 366966 at *4 (same).

In addition, the District of Massachusetts can refer to this Court's "prior claim construction if it is concerned about an inconsistent ruling." *ConnecTEL, LLC,* 2005 WL 366966, at *4. *See also Medimmune, LLC*, 2009 WL 1011519, at *3(district court "would accord deference to prior claim construction ruling as persuasive authority," citing *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993)). Thus, "the gains in judicial economy are at best minimal, and possibly non-existent since such gains could be realized by simply referring to [this Court's] claim construction, if necessary." *ConnecTEL, LLC,* 2005 WL 366966 at *4. Accordingly, this Court's previous experience with the patent-in-suit does not alter the conclusion that the District of Massachusetts is the more convenient forum.

### 3. Defendants Are Unaware of Any Administrative Difficulties Flowing from Court Congestion in the District of Massachusetts.

The Federal Circuit has noted court congestion "appears to be the most speculative" factor in transfer analysis. *In re Genentech*, 566 F.3d at 1347. Nevertheless, Defendants are unaware of any administrative difficulties flowing from court congestion that weighs in favor of either the District of Massachusetts or the Eastern District of Texas. To the contrary, the District of Massachusetts recently implemented new patent procedures—similar to those in the Eastern District of Texas— specifically designed to administer patent cases more effectively and quickly. *See* D. Mass. L.R. 16.6, "Scheduling and Procedures in Patent Infringement Cases" (adopted Nov. 4, 2008) (available at http://www.mad.uscourts.gov/general/pdf/PubNotice-NewPatent-

LR16.6.pdf).[5]  The new procedures are specifically designed to "help provide certainty and order to patent litigation and are intended to be neutral as between patentee and accused infringer."  *Id.*  The new procedures demonstrate that the District of Massachusetts has taken steps to efficiently and effectively manage patent cases.  Accordingly, this factor favors neither the Eastern District of Texas nor the District of Massachusetts.

The remaining factors—all other practical problems that make a trial easy, expeditious and inexpensive; the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflicts of law or in the application of foreign law—do not favor one forum over the other, and thus are neutral.  See *In re TS Tech*, 551 F.3d at 1320 (recognizing that patent claims are governed by federal law; and that federal district courts "are capable of applying patent law to infringement claims").

### V.   CONCLUSION

There are no witnesses within Texas.  Moreover, there are no relevant documents there.  The convenience to the witnesses and parties, availability of compulsory attendance at trial and access to evidence factors all weigh significantly in favor of transfer.  Because the District of Massachusetts is a "clearly more convenient" forum for this case than the Eastern District of Texas, this case should be transferred to the District of Massachusetts.

WHEREFORE, Defendants Vistaprint Limited and OfficeMax Incorporated prey that this Court issue an order:

1. Transferring this action pursuant to 28 U.S.C. §1404(a) to the United States District Court for the District of Massachusetts, Boston Division; and

2. Granting such further and other relief that this Court deems just and proper.

---

[5] A copy of D. Mass. L.R. 16.6 is attached as Exhibit E.

DATED:  November 6, 2009 COOLEY GODWARD KRONISH, LLP

/s/ *Richard S. Sanders*
Richard S. Sanders
COOLEY GODWARD KRONISH LLP
The Prudential Tower
800 Boylston Street
Boston, MA 02199
rsanders@cooley.com
Tel:  (617) 937-2300
Fax:  (617) 937-2400

Thomas J. Friel
Matthew P. Gubiotti
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
tfriel@cooley.com
mgubiotti@cooley.com
Tel: (650) 843-5000
Fax: (650) 843-0663

Heather C. Faltin
COOLEY GODWARD KRONISH LLP
One Freedom Square
11951 Freedom Drive
Reston, Virginia 20190
hfaltin@cooley.com
Tel: (703) 456-8000
Fax: (703) 456-8100


Attorneys for Defendant/Counterclaimant
VISTAPRINT LIMITED. and Defendant
OFFICEMAX INCORPORATED

-17-

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document, **Defendants Vistaprint Limited and OfficeMax Incorporated's Joint Motion to Transfer Venue** was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by facsimile and/or U.S. First Class Mail on November 6, 2009.

                                        _/s/ Richard S. Sanders_____
                                              Richard Sanders

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that on November 5, 2009, I conducted a personal conference by phone as required by Local Rule CV-7(h) with ColorQuick's counsel, Michael Shore. After giving both sides an opportunity to compare their views, no agreement could be reached because ColorQuick's counsel does not agree that public and private factors favor transfer to District to Massachusetts, and the discussions have conclusively ended, leaving the issues in this motion for the Court to resolve. The motion is therefore opposed.

.

                                                                     _/s/ Richard S. Sanders_  
                                                                      Richard Sanders