IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| COLORQUICK, L.L.C., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 6:09-CV-323 |
| v. | § | |
| | § | JURY DEMANDED |
| VISTAPRINT LIMITED, and | § | |
| OFFICEMAX INCORPORATED, | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

Michael W. Shore, Attorney-in-Charge
Alfonso Garcia Chan
Justin B. Kimble
Derek N. Johnson
**SHORE CHAN BRAGALONE, LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
(214) 593-9110 Telephone
(214) 593-9111 Facsimile

ATTORNEYS FOR PLAINTIFF
COLORQUICK, L.L.C.

**TABLE OF CONTENTS**

**Page**

I.   Introduction ............................................................................................................... 1

II.  Legal Standard ........................................................................................................... 2

III. Argument and Authorities .......................................................................................... 4

    A.  Relevant Evidence Is Scattered Throughout the United States
        and Abroad ......................................................................................................... 4

    B.  This is a National, Not a Regional Dispute ....................................................... 8

    C.  Compulsory Process for All Non-Party Witnesses is Not Available
        in Either Forum .................................................................................................. 9

    D.  Party Witnesses Do Not Favor Transfer .......................................................... 11

    E.  The Interest of Justice and Judicial Economy Weighs Against Transfer ........ 12

    F.  The Balance of the Relevant Public Interest Factors Weigh Strongly
        Against Transfer .............................................................................................. 14

IV.  Conclusion ............................................................................................................... 15

**TABLE OF AUTHORITIES**

                                                                                             **Page**

*Acceleron, LLC v. Egenera, Inc.*,
   634 F. Supp. 2d 758 (E.D. Tex. 2009) ............................................................. 13, 14, 17

*Colorquick, L.L.C. v. Eastman Kodak Company,*
   No. 6:06-cv-390, 2008 WL 5771324 (E.D. Tex. Jun. 25, 2008). ................................ 2, 15, 16

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ............................................................................. 16

*In re TS Tech. USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ...................................... 2, 3, 7

*In re VistaPrint Corp Marketing and Sales Practices Litigation*,
   No. 4:08-MD-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ................................. 5, 6

*In re Volkswagen of Am. Inc.*,
   545 F.3d 304 (Fed. Cir. 2008) (cert. denied) ........................................... 1, 2, 3, 7, 11

*Invitrogen v. Gen. Elec. Co.*,
   No. 6:08-CV-113, 2009 WL 331889 (E.D. Tex. Feb. 9, 2009) ........................................... 4

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*,
   No. 6:08-CV-262, -263, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) ............................. 4, 7

*Logan v. Hormel Foods Corp.*,
   No. 6:04-CV-211, 2004 WL 5216126 (E.D. Tex. Aug. 25, 2004) ........................................ 15

*MHL Tek, LLC v. Nissan Motor Co.*,
   No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009) ..................................... 3, 14

*Miller v. Longview Psychiatric Hosp.*,
   2:08-CV-42, 2009 WL 748094 (E.D. Tex. Mar. 19, 2009) ................................................ 11

*Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*,
   No. 2:07-CV-507, 2009 WL 349760 (E.D. Tex Feb. 3, 2009) ............................................. 4

*Odom v. Microsoft Corp.*,
No. 6:08-CV-331, 2009 WL 279968 (E.D. Tex. Jan. 30, 2009) ............................................ 8

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir 1997) ............................................................................. 14

*Symbol Techs., Inc. v. Metrologic Instruments, Inc.*,
   450 F. Supp. 2d 676 (E.D. Tex 2006) .................................................................................. 8

*Ternium Int'l U.S.A. Corp. v. Consolidated Sys., Inc.*,
   No. 3:08-CV-0816-G, 2009 WL 464953 (N.D. Tex. Feb. 24, 2009) ........................................ 8

*Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*,
   331 F. Supp. 2d 567 (E.D. Tex. 2004) .................................................................................. 3

**STATUTES**

15 FED. PRAC. & PROC. JURIS. 3d § 3854 .................................................................................. 14

28 U.S.C. § 1404 .................................................................................................................... 2, 14

Plaintiff ColorQuick, L.L.C. ("ColorQuick") hereby responds in opposition to Defendants VistaPrint Limited ("VistaPrint Ltd") and OfficeMax Incorporated's ("OfficeMax") (collectively "Defendants") Joint Motion to Transfer Venue ("Motion to Transfer").

## I. Introduction

The Court should deny Defendants' Motion to Transfer because Defendants have not carried what the Fifth Circuit has described as a "significant burden" to show that the District of Massachusetts is a "clearly more convenient" venue. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 314, n.10, 315 (Fed. Cir. 2008) (cert. denied) ("*In re Volkswagen II*"). First, Defendants' attempt to characterize VistaPrint USA, Incorporated ("VistaPrint USA"), which is located in Massachusetts, as the true defendant is just a disingenuous attempt to manufacture a convenient venue-alternative to this one. Notably, Defendants do not claim that VistaPrint USA should be a party to this lawsuit or would have any liability, and in any event VistaPrint USA is only one of eleven wholly-owned subsidiaries of the multinational VistaPrint Ltd. Further, Defendants ignore the fact that OfficeMax is based in Naperville, Illinois. Even if Defendants' factual contentions were accepted at face value, the relevant evidence and witnesses are scattered throughout the country and abroad, including in Texas, Illinois, Pennsylvania, New Jersey, Canada Bermuda, Jamaica, the Netherlands, and elsewhere. Thus, this dispute is not a regional dispute centered in Massachusetts.

Second, this Court has an invaluable familiarity with the patent-in-suit, U.S. Patent No. 6,839,149 (the "'149 patent"), and the technology at issue. The Court previously reviewed technical tutorials and claims construction briefing, conducted a claim construction hearing, and issued a claim construction order for the '149 patent. *See Colorquick, L.L.C. v. Eastman Kodak Company,* No. 6:06-cv-390, 2008 WL 5771324 (E.D. Tex. Jun. 25, 2008). So the interests of

justice and judicial economy necessitate that the case remain in this Court where judicial resources may be conserved.

Third, transferring the case to the District of Massachusetts could make the dispute more complicated, lengthy, and expensive, because the median time-to-trial for patent cases in this Court is nearly two years quicker than in the District of Massachusetts.  Further, the District of Massachusetts has only recently enacted patent rules, whereas the Local Patent Rules of this Court have been in effect for many years, and the Court has a wealth of precedent and experience in resolving disputes about the application of those rules.

Thus, Defendants have not satisfied their high burden to violate ColorQuick's choice of venue, and the Court should deny Defendants' motion.  *See In re Volkswagen II*, 545 F.3d at 314-15 (holding that plaintiff's choice of venue weighs against defendant's burden in proving that the transferee venue is "clearly more convenient"); *see also In re TS Tech. USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

## II.  Legal Standard

A plaintiff's choice of forum remains an important consideration in the Court's analysis, and Defendants must show "good cause" why that choice should be disturbed.  *In re Volkswagen II*, 545 F.3d at 315.  This Court has reiterated that transfer is unwarranted when the relevant evidence is spread across the nation, even if transfer may be more convenient for some of the witnesses.  *See MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 WL 440627, at *1 (E.D. Tex. Feb. 23, 2009) (denying transfer to Michigan even though the inventors, prosecutors, and some defense witnesses were located there, because the other defendants were spread across the country and globe); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, No. 6:08-CV-262, -263, 2009 WL 440525, at *1 (E.D. Tex. Feb. 20, 2009) (denying transfer to California even

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE – Page 2**

though it would be more convenient for some witnesses, because other witnesses were spread across the country); *Invitrogen v. Gen. Elec. Co.*, No. 6:08-CV-113, 2009 WL 331889, at *1 (E.D. Tex. Feb. 9, 2009) (denying transfer to Maryland even though that district would be less convenient for witnesses residing in California, although more convenient for some witnesses and provide compulsory process for other witnesses); *Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*, No. 2:07-CV-507, 2009 WL 349760, at *1 (E.D. Tex Feb. 3, 2009) (denying transfer to North Carolina even though some potential witnesses were located there because it would be less convenient for California witnesses, and the remaining witnesses were dispersed throughout the United States).

Transfer under 28 U.S.C. §1404(a) is only appropriate if the moving party "clearly demonstrate[s]" that the convenience of the parties and witnesses necessitates transfer. *In re Volkswagen II*, 545 F.3d at 314.  The Court assesses convenience by examining private and public factors.  The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re TS Tech.*, 551 F.3d at 1319.  The public interest factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.  Significantly, this Court has found that the fact that a plaintiff does not itself reside in the forum "does not usefully inform the Court's analysis." *Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 572 (E.D. Tex. 2004).

## III. Argument and Authorities

### A. Relevant Evidence Is Scattered Throughout the United States and Abroad

It is undisputed that VistaPrint Ltd owns the website, the software, and the servers that operate at least some of the complained-of activities that are the subject of this lawsuit (of course, OfficeMax owns another website that is the subject of this lawsuit). *See* Motion to Transfer at 3. And it is undisputed that VistaPrint Ltd. is based in Bermuda, which was its corporate headquarters until shortly after this lawsuit was filed.[1] *See* Declaration of Donald Nelson ("Nelson Decl.") at ¶2 (Dkt. 27-19). Further, VistaPrint Jamaica Ltd, in Jamaica, is the location of the English Language Customer Service and Design Service Operations for visatprint.com. *See* Declaration of Derek Johnson ("Johnson Declaration") at Ex. A. Still further, the printed items purchased through its complained-of website are located in at VistaPrint North American Services Corp., in Windsor, Ontario, Canada. *Id.* at Ex. A. So VistaPrint has arranged itself all over the world, presumably for tax advantages and to limit liability. But in the Motion to Transfer, Defendants' characterize this as a dispute solely about non-defendant VistaPrint USA.

This tactic is inconsistent with the opposite position the company recently took in another lawsuit in the Southern District of Texas, *In re VistaPrint Corp. Marketing and Sales Practices Litigation*, where VistaPrint USA moved to dismiss the case against it based on the fact that VistaPrint Ltd. sells products from websites operated "from servers located in Bermuda" and that VistaPrint USA is just "one of VistaPrint Limited's eleven wholly-owned operating subsidiaries. *See* Johnson Decl. at Ex. G, attaching Defendant VistaPrint USA, Incorporated's Rule 12(b) Mot

---

[1] It appears that after this suit was filed, VistaPrint moved its corporate headquarters from Bermuda to The Netherlands. *See* Declaration of Derek Johnson ("Johnson Decl."), Ex. B.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE – Page 4**

to Dismiss, at p. 3-4; *see also In re VistaPrint Corp Marketing and Sales Practices Litigation*, MDL No. 4:08-md-1994, 2009 WL 2884727, at *3 (S.D. Tex. Aug. 31, 2009) (denying motion to dismiss). So when it is convenient, VistaPrint points to the Bermuda operations and, when it is not convenient, VistaPrint points to its subsidiary's Massachusetts operations.

Indeed, Defendants cherry-pick in their recitations of questionable "facts" and elevate the importance of non-defendant VistaPrint USA to try to make this dispute appear to be based in Massachusetts. Despite the fact that VistaPrint is a large multi-national conglomerate with 11 wholly-owned subsidiaries and 1850 employees located throughout the world, Defendants focus only on VistaPrint USA, and misleadingly suggest that essentially all research, design, and development work relating to *vistaprint.com* has taken place in Massachusetts. *See* Johnson Decl., Ex. B. And Defendants' motion obscures the fact that other witnesses and information are spread throughout the United States and abroad, and ignores Defendant OfficeMax altogether.

Defendants conveniently identify no information or witnesses at any location other than those relating to VistaPrint USA in Massachusetts. But it strains credulity to suggest that, even though VistaPrint Ltd was, until just after this lawsuit was filed, based in Bermuda, and even though the servers are located in Bermuda, no documents or potential witnesses are located there. Additional electronic information undoubtedly resides on the computers and servers from which VistaPrint Ltd. operates its websites. Furthermore, other VistaPrint entities that are likely to have information relevant to this action include at least: (1) VistaPrint North American Services Corp., in Canada, where the printers are located; (2) VistaPrint Jamaica Limited, in Jamaica, where the customer support is located; (3) its present corporate parent entity in the Netherlands; and (4) the company's headquarters and location of its CEO, in Paris, France. *See* Johnson Decl. at Ex. A. Further, VistaPrint Ltd. also has subsidiaries in Spain, Switzerland, and elsewhere. *Id.*

The evidence that is likely to be relevant in this case will largely be electronically stored information ("ESI"), as opposed to paper documents or other physical evidence. VistaPrint Ltd is an online retailer of printed marketing products and services that operates 18 websites internationally using its 11 subsidiaries. *See* Johnson Decl. at Ex. G. The patent-in-suit and the accused products relate to the digital manipulation of graphic images. *See* Complaint at ¶¶7-10. Thus, relevant ESI will include the software necessary for VistaPrint Ltd to operate its websites offshore in Bermuda. Accordingly, transfer will likely not facilitate access to either documentary or physical evidence. *See In re Volkswagen II*, 545 F.3d at 316 (in seeking venue transfer, the movants identified sensitive physical evidence and a crash site); *In re TST Tech*, 551 F.3d at 1321 (in seeking venue transfer, the movants identified bulky physical evidence).

Even assuming as true Defendants' arguments that information is "located" in Massachusetts, the location of ESI has minimal bearing on which forum is more convenient. *See J2 Global*, 2009 WL 440525, at *2 ("identifying the location of electronic sources of proof will typically not tip this factor in favor of transfer"); *see also Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 678 (E.D. Tex 2006); *see also Ternium Int'l U.S.A. Corp. v. Consolidated Sys., Inc.*, No. 3:08-CV-0816-G, 2009 WL 464953, at *3 (N.D. Tex. Feb. 24, 2009) (stating that the burden to transport documents, by itself, is insufficient to support a change of venue). As the court stated in *Odom v. Microsoft Corp.*, No. 6:08-CV-331, 2009 WL 279968, at *3 (E.D. Tex. Jan. 30, 2009): "Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is 'stored,' it does not follow that transfer to the location of the stored information is more convenient for anyone."

As to OfficeMax, Defendants claim that "essentially all documents relating to design, development, operation and maintenance would be located in the custody or control of Vistaprint's domestic subsidiary." Declaration of Tom Rau at ¶6 (Dkt. 27-20). Even if true, Mr. Rau's carefully qualified statement shows that relevant information as to OfficeMax will be stored elsewhere besides in Massachusetts. Mr. Rau claims that "essentially all" of the information he identifies is in VistaPrint USA's custody or control, so he implicitly concedes that some of those types of information are located elsewhere.

Also, Mr. Rau does not address other areas of relevant information, like that relating to OfficeMax's sales of the accuse products or services, communications with OfficeMax's customers about the operation of the OfficeMax website, information in OfficeMax's possession about its knowledge of the patent-in-suit, and information relating to its decision to adopt VistaPrint's software for use in the accused ImPress product. OfficeMax identifies itself as a leader in business-to-business office products and solution and retail office products and document services. *See* Johnson Decl. at Ex. C. And OfficeMax stakes its reputation on products offered in its stores, online, and to businesses through its business-to-business operations. *Id.* As such, OfficeMax has a vested interest in ensuring that these products, such as the ImPress kiosks (several of which are located in the Eastern District of Texas) and website, adhere to high standards. Thus, OfficeMax and its employees (several of whom are located far from Massachusetts) must have a significant amount of information about the accused products.

In particular, OfficeMax offered ImPress services before it was announced that it would provide those services through software powered by VistaPrint. *Id.* at Ex. H. Only OfficeMax employees are able to testify about the decision to adopt VistaPrint's software. Further, only OfficeMax possesses information about requirements for the printing services it provides and the

importance of those features to both its customers and OfficeMax, which is critical to show the advantages of the invention over competitive products or the prior art. And only OfficeMax has information about the OfficeMax sales and marketing of services through the ImPress kiosks and website.

Thus, because information—documents, ESI, and witnesses—that is likely relevant to this dispute is scattered literally all over the world, the location of that information does not favor transferring this case to Massachusetts. *See Novartis*, 2009 WL 349760, at *3 ("While transfer to North Carolina would make access to some proof easier, this Court is not convinced that access to all evidence would be so."); *Invitrogen*, 2009 WL 331889, at *2 (finding this factor neutral where "Maryland would be a more convenient venue for some sources of proof, but less convenient for others").

### B. This is a National, Not a Regional Dispute

In an attempt to analogize the present case to *TS Tech* and *PartsRiver, Inc.*, Defendants assert that this is a regional dispute. *See* Motion for Transfer at 2. This assertion ignores VistaPrint Ltd's organization and international operations, and OfficeMax's presence as a defendant.

First, VistaPrint Ltd is not a United States entity, and by its own claims is not tied to Massachusetts. *See* Johnson Decl. at Ex. G. Instead, it is a multi-national conglomerate that retails printing products and services online through 18 websites using its 11 subsidiaries. *Id.* at Ex. G. Indeed, VistaPrint Ltd. boasts that it has customers in over 120 countries. *Id.* at Ex. G. VistaPrint Ltd. has offices that perform functions for the vistaprint.com website in Jamaica, Canada, Bermuda, The Netherlands, and elsewhere. *Id.* at Ex. A. Because VistaPrint claims to have 1850 employees, 1300 of those employees are located in places other than Massachusetts.

*See* Johnson Decl. at Ex. A. Also, VistaPrint Ltd has relationships similar to that with OfficeMax with other companies like FedEx Office, which is based in Dallas, Texas. *Id.* at Ex. B. Indeed, it appears that FedEx Office uses the same software that is the subject of this suit. *Id.* at Ex. D. Thus, it is likely that relevant witnesses and/or documentation will be in the custody or control of FedEx Office in Dallas.

Furthermore, OfficeMax is headquartered in Naperville, Illinois and maintains a portion of its business management in Boise, Idaho (which is closer to East Texas than Massachusetts). *See id.* at Ex. C. OfficeMax operates 937 stores with ImPress kiosks across the Unites States, 9 of which are operated in the Eastern District of Texas. *See* Rau Decl. at ¶8 (Dkt. 27-20).

Finally, ColorQuick is based in Pennsauken, New Jersey (a suburb of Philadelphia), with clientele all over the United States, including in Texas, Idaho, and California. *See* Declaration of Mark Weiss at ¶3.

Thus, this case is not one in which there is a clear central location of the facts underlying the suit, or even where all of the parties are located in one region.

C.  **Compulsory Process for All Non-Party Witnesses is Not Available in Either Forum**

The factor regarding the availability of compulsory process to secure the attendance of witnesses weighs more heavily in favor of transfer when a transferee venue is said to have "absolute subpoena power." *See In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" exists where all relevant and material third party witnesses reside within the subpoena power of a particular venue. *See id.* at 316; *Miller v. Longview Psychiatric Hosp.*, 2:08-CV-42, 2009 WL 748094, at *3 (E.D. Tex. Mar. 19, 2009) (Ward, J.).

Here, Defendants have vaguely alluded to three non-party witnesses and it is unclear whether a compulsory process analysis should apply to any of them. Defendants do not identify

these witnesses by name, much less provide sworn declarations from them. Instead, Defendants refer generally to them through the declaration of VistaPrint USA's Chief Information Officer, Donald Nelson ("Nelson Decl."). How can we know that these three individuals would even have information that is relevant or necessary for this case? How can we know that there are not other former employees with better and more relevant information and who are located closer to this venue, or even within it?

The first former employee of VistaPrint USA that is referenced is supposedly one of the designers of VistaPrint Ltd's early online printing source code, and Mr. Nelson claims the unnamed person "maintains a residence" in Massachusetts. Nelson Decl. at ¶17. It is unclear what is meant by "maintaining a residence" in Massachusetts (it appears to suggest that it is but one of several residences in different states), but the choice of words suggests that this individual may not even be subject to compulsory process from a Massachusetts court. Notably, Defendants also do not specify whether the accused products are even derived from or share any common code with the "early versions of VistaPrint Ltd's online digital printing services" allegedly designed by the unnamed former employee.

The only other non-party witnesses that Defendants identify are a former Chief Financial Officer and former a General Counsel for VistaPrint USA. Defendants claim that these two unnamed individuals both reside in Massachusetts and may have information relevant to damages and a reasonable royalty. *See* Nelson Decl. at ¶18. Defendants provide no particularized reason why the former CFO and general counsel would be more capable to provide any information about these topics than the current CFO or general counsel. Indeed, testimony relating to patent damages is usually addressed through the testimony of a Rule 30(b)(6) corporate representative. Under the federal rules, a party has a duty to educate its

corporate representative about designated topics like the sales and financial information that are relevant to damages. *See* F.R.C.P. 30(b)(6). Furthermore, reasonable royalty testimony will likely come from a party's corporate representative and/or the parties' designated experts.

Thus, the non-party witnesses are not substantially or specifically identified by Defendants such that their convenience should be a factor in the Court's determination. Since there is no jurisdiction with "absolute subpoena power," and neither the Eastern District of Texas nor the District of Massachusetts is in a better position to compel attendance of any identifiable third party witnesses, this factor is neutral at best. *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 765 (E.D. Tex. 2009) (finding this factor neutral when neither the transferor or transferee district has absolute subpoena power).

D.  **Party Witnesses Do Not Favor Transfer**

Defendants' identification of five current officers or managers of VistaPrint USA should be given very little weight by the Court. As to these party witnesses, the so-called "100-mile" rule should not apply, because by Defendants' admission ColorQuick witnesses living in and around Philadelphia would also have to travel more than 100 miles to the District of Massachusetts. *See* Motion for Reconsideration at 8. Further, employees of OfficeMax who may testify about similar issues are not within 100 miles of the District of Massachusetts. Indeed, the distance from Naperville, Illinois to Boston is virtually the same as the distance from Naperville to Tyler. Defendants also fail to identify individuals at VistaPrint Ltd's other subsidiaries that may also give additional relevant testimony. Again, Defendants cherry-pick by identifying only a five individuals that they believe support their motion. Because this factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding," the location of party witnesses does not favor

DEFENDANTS' MOTION TO TRANSFER VENUE – Page 11

transfer in this case. *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 766 (E.D. Tex. 2009)(quoting *In re Volkswagen I*, 371 F.3d at 204).

E.   **The Interest of Justice and Judicial Economy Weighs Against Transfer**

Section 1404(a) requires the Court to consider "the interest of justice." 28 U.S.C. § 1404(a). And, in patent cases, the Federal Circuit has determined that the interest of justice, which includes judicial economy, may trump the other private and public interest factors when one court is already familiar with the issues involved in the case. *See Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir 1997); *see also MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 WL 440627, at *7 (E.D. Tex. Feb. 23, 2009); CHARLES ALAN WRIGHT ET AL. 15 FED. PRAC. & PROC. JURIS. 3d § 3854 ("[A] number of federal courts have considered th[e interest of justice] factor decisive--outweighing the other statutory factors--in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction."). Here, the interests of justice and judicial economy weigh strongly against transfer.

This Court has invested substantial time and resources to learn and understand the technology and the '149 patent, and in a separate case involving the same patent, has reviewed tutorials on the patented technology at issue, conducted claim construction proceedings, and issued a claim construction order addressing numerous claim terms. *See Colorquick, L.L.C. v. Eastman Kodak Company,* No. 6:06-cv-390, 2008 WL 5771324 (E.D. Tex. Jun. 25, 2008). Courts routinely give great weight to previous experience with a patent or its technology in determining the most convenient forum for a dispute. *See J2 Global*, 2009 WL 440525, at *5 (stating that a prior claim construction opinion, familiarity with the technology or the patents-at-issue may help in a venue transfer determination); *see also Zoltar Satellite Sys.*, 402 F. Supp. 2d

at 735 (granting transfer to California court that had already construed three out of the four patents in prior action against a different defendant and was intimately familiar with the relevant technology, in part because denying the motion to transfer would require the court to engage in duplicative and unnecessary work); *MHL Tek,* 2009 WL 440627, at *7 (holding that where another case against different defendants involving the same patents was before the court, retaining the case was required to preserve judicial economy); *Logan v. Hormel Foods Corp.*, No. 6:04-CV-211, 2004 WL 5216126, at *2 (E.D. Tex. Aug. 25, 2004) (granting motion to transfer, determining there was no reason to duplicate the work the transferee court had performed in a prior case involving the same patent, and that doing so would "risk inconsistent claim constructions, create greater uncertainty regarding the patent's scope, and impede the administration of justice," even though earlier filed case was against different defendants and had settled prior to final judgment). Those courts transferred the actions to another court that was already familiar with the patented technology in the interest of judicial economy. Similarly, this Court should deny transfer in the interest of judicial economy, because this Court has similar experience with the '149 patent.

The Court has invested significant time and resources learning the evidence and the technology asserted in ColorQuick's patent. The Court painstakingly addressed the ColorQuick patent asserted in the *Eastman Kodak* case to interpret many of the same claim terms that will be at issue in this case – issuing an extensive claim construction ruling. *See Colorquick, L.L.C. v. Eastman Kodak Company,* No. 6:06-cv-390, 2008 WL 5771324 (E.D. Tex. Jun. 25, 2008). The accused products in this matter involve the same underlying technology as the accused products at issue in the prior case. It "would be wasteful of judicial resources and detrimental to judicial economy" for another court to expend the effort necessary to obtain the same level of

understanding of the patent and the technology that this Court already has, and could also lead to inconsistent rulings. *Zoltar Satellite Sys.*, 402 F. Supp. 2d at 737. Thus, the interests of justice strongly favor denying Defendants' motion to transfer.

## F. The Balance of the Relevant Public Interest Factors Weigh Strongly Against Transfer

The time to trial and the efficiency in handling the complexities of this patent litigation is of paramount concern to ColorQuick and its business. The transfer of this case to the District of Massachusetts would significantly increase the time to trial. Accordingly, the first public interest factor, the administrative difficulties caused by court congestion, which relates to the speed with which a case can come to trial, strongly weighs against transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Cases typically go to trial in 21.1 months in the Eastern District of Texas, and in 27.1 months in the District of Massachusetts. *See* Johnson Decl. at Ex. F. Even more relevant, *patent* cases in the Eastern District of Texas reach trial in 1.79 years, compared to 3.76 years in Defendants' proposed district. *Id.* at E. Thus, this case would likely be brought to trial nearly two years earlier than if it is transferred to the District of Massachusetts. *See Aloft Media, LLC v. YAHOO!, Inc.*, No. 6:08-CV-509, 2009 WL 1650480, at *3 (E.D. Tex. June 10, 2009); *Acceleron, LLC*, 634 F. Supp. 2d at 766 (denying transfer while determining that the 37.5 month median time to trial in the District of Delaware versus a 18 month median time to trial weighed strongly against transfer from this Court).

Further, because the "Scheduling and Procedures in Patent Infringement Cases" of the District of Massachusetts have only been in effect for one year, the District of Massachusetts court has less experience with such rules and there is less precedent regarding their application. *See* Motion for Transfer at 14. In contrast, the Local Patent Rules of this district have been in effect for nearly five years. *See* General Order 05-8. So this Court has much more experience

applying such rules, and there is a large amount of precedent regarding their application. Thus, this factor weighs strongly against transfer to the District of Massachusetts.

## IV. Conclusion

Defendants have not met their burden. The balance of the public and private interest factors used by this Court to determine whether convenience warrants a transfer of this action weighs in favor of the Eastern District of Texas and against transfer. Accordingly, the Court should deny Defendants' Motion to Transfer. In the alternative, if the Court determines transfer may be warranted, ColorQuick requests that the parties be allowed to conduct additional discovery to build a complete factual record. Defendants have offered only select information, and ColorQuick should be allowed to determine the locations and substance of relevant evidence and the names and locations of potential witnesses Defendants have failed to provide.

Dated: December 7, 2009.                                Respectfully submitted,

                                                                                       */s/ Michael W. Shore*
                                                          Michael W. Shore, Attorney-in-Charge
                                                          State Bar No. 18294915
                                                          Alfonso Garcia Chan
                                                          State Bar No. 24012408
                                                          Justin B. Kimble
                                                          State Bar No. 24036909
                                                          Derek N Johnson
                                                          State Bar No. 24060027
                                                          **SHORE CHAN BRAGALONE, LLP**
                                                          901 Main Street, Suite 3300
                                                          Dallas, Texas 75202
                                                          (214) 593-9110 Telephone
                                                          (214) 593-9111 Facsimile

                                                          ATTORNEYS FOR PLAINTIFF
                                                          COLORQUICK, L.L.C.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-f(a)(3) on December 7, 2009.

                                                  */s/ Justin B. Kimble*  
                                                  Justin B. Kimble