IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| COLORQUICK, L.L.C., | § § § | |
| *Plaintiff,* | § § | No. 6:09-CV-323 |
| v. | § § | JURY DEMANDED |
| VISTAPRINT LIMITED, and OFFICEMAX INCORPORATED, | § § § § | |
| *Defendants.* | § | |

## PLAINTIFF COLORQUICK, L.L.C.'S
## OPENING CLAIM CONSTRUCTION BRIEF

Dated: August 23, 2010

Michael W. Shore
Alfonso Garcia Chan
Justin B. Kimble
Derek N. Johnson
Tim T. Wang
**SHORE CHAN BRAGALONE
DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
(214) 593-9110 Telephone
(214) 593-9111 Facsimile

ATTORNEYS FOR PLAINTIFF
COLORQUICK, L.L.C.

# TABLE OF CONTENTS

                                                            **Page**

I. INTRODUCTION ............................................................................................................ 1

II. LAW OF CLAIM CONSTRUCTION ................................................................................. 1

III. U.S. PATENT NO. 6,839,149 AND THE CLAIM TERMS AT ISSUE ........................................ 4

IV. ARGUMENT AND AUTHORITIES .................................................................................. 7

    A. The Court's Prior Construction of "Static Template" Was Correct. ......................... 7

    B. Defendants' Proposed Re-Construction of "Static Template" Is Legally Incorrect. . 9

        1. The Court Previously Rejected a "Fixed" Limitation. ...................................... 9

        2. Claim 2 Cannot Have a "Run Time" Limitation Because of Claim 7. ............ 10

        3. The "User-Specified" Limitation Finds No Support in the Patent. ................ 11

V. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Abbott Laboratories v. Dey, L.P.*,
   110 F. Supp. 2d 667 (N.D.Ill.2000) ............................................................................... 8

*Alloc, Inc. v. Int'l Trade Comm'n*,
   342 F.3d 1361 (Fed. Cir. 2003) ...................................................................................... 2

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*,
   262 F.3d 1258 (Fed. Cir. 2001) ...................................................................................... 2

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
   388 F.3d 858 (Fed. Cir. 2004) .................................................................................... 2, 5

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002) ...................................................................................... 3

*Comark Commc'ns, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998) ...................................................................................... 3

*Home Diagnostics, Inc., v. Lifescan, Inc.*,
   381 F.3d 1352 (Fed. Cir. 2004) ...................................................................................... 3

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004) .................................................................................. 4, 12

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) .................................................................................... 11

*Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*,
   554 F.3d 1010 (Fed. Cir. 2009) ...................................................................................... 3

*Lamps Plus, Inc. v. Dolan,* No. 3:01-CV-1537,
   2003 WL 22435702 (N.D.Tex. Aug. 26, 2003) ............................................................ 8

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ...................................................................................... 3, 7

*Maurice Mitchell Innovations, L.P. v. Intel Corp.*, No. 2:04-CV-450,
   2006 WL 1751779 (E.D. Tex. Jun. 21, 2006) ............................................................... 8

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) ...................................................................................... 3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................... *passim*

*Pozen Inc. v. Par Pharmaceutical, Inc.*, Civ. No. 6:08cv437-LED-JDL,
    2010 WL 2522422 (E.D. Tex. June 18, 2010) ................................................... 2, 3, 4

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ............................................................................. 2, 3

*Texas Instruments, Inc. v. Linear Technologies Corp.*,
    182 F.Supp.2d 580 (E.D.Tex. 2002) .......................................................................... 8

*TM Patents, L.P. v. International Business Machines Corp.*,
    72 F. Supp. 2d 370 (S.D.N.Y.1999) ........................................................................... 8

*United Carbon Co. v. Binney & Smith Co.*,
    317 U.S. 228 (1942) ................................................................................................... 7

*Visto Corp. v. Research in Motion Ltd.*, No. 2:06-CV-181,
    2008 WL 1930295 (E.D. Tex. 2008) ......................................................................... 8

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .................................................................................... 3

*Wacom Co. v. Hanvon Corp.*, No. C06-5701RJB,
    2007 WL 4561098 (W.D. Wash. 2007) ................................................................... 11

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001) ........................................................................... 10, 11

*Wright Medical Tech., Inc. v. Osteonics Corp.*,
    122 F.3d 1440 (Fed. Cir. 1997) ........................................................................... 9, 11

## INDEX TO EXHIBITS

**EXHIBIT**                        **DESCRIPTION**

A        Memorandum Opinion and Order, Dkt. No. 67, *ColorQuick, L.L.C. v. Eastman Kodak Company*, No. 6:06-cv-390.

B        U.S. Patent No. 6,839,149.

Plaintiff ColorQuick, L.L.C. respectfully submits this opening claim construction brief setting forth its proposed construction of the single disputed term—previously construed by this Court—of the asserted claims of U.S. Patent No. 6,839,149 ("the '149 patent"), and addressing the proposed construction set forth by Defendants Vistaprint Limited ("Vistaprint Ltd") and OfficeMax Incorporated ("OfficeMax") (collectively "Defendants").

## I.  INTRODUCTION

The asserted claims of the '149 patent have already been construed by this Court in *ColorQuick, L.L.C. v. Eastman Kodak Company*, No. 6:06-cv-390 ("the Kodak case"). The Court issued a detailed Memorandum Opinion & Order on June 25, 2008. *See* Mem. Op. & Order attached as Exhibit A. And while Defendants agree with five of the Court's six constructions from the Kodak case, they curiously ask the Court to re-construe the term "static template." But the Court's prior construction of "static template" is correct and should be adopted again in this case. This is the only disputed term before the Court.

Defendants invite the Court to add three additional limitations to the meaning of "static template." Specifically, Defendants ask the Court to add a limitation that the "static template" must be "fixed," which Kodak also proposed and the Court rejected. Further, Defendants add limitations that the "static template" must be "created at run time" and be "user-specified." These limitations are not only not required by the claim language or the specification, but impermissibly read out disclosed embodiments. ColorQuick urges the Court to adopt its previous construction of "static template" that is supported by intrinsic and extrinsic evidence, and reject Defendants' proposal.

## II.  LAW OF CLAIM CONSTRUCTION

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303,

1312 (Fed. Cir. 2005) (en banc) (citaton omitted). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *Id.*; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.,* 262 F.3d 1258, 1267 (Fed. Cir. 2001); *Pozen Inc. v. Par Pharmaceutical, Inc.*, Civ. No. 6:08cv437-LED-JDL, 2010 WL 2522422, at *3 (E.D. Tex. June 18, 2010). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *See Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The Court begins with the words of the claim. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002); *see also CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("The terms used in the claims bear a presumption that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art."). The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *See Phillips*, 415 F.3d at 1314; *see also Pozen Inc.*, 2010 WL 2522422, at *3. First, a term's context in the asserted claim can be very instructive. *See Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *See id*. Differences among the claim terms can also assist in understanding a term's meaning. *See id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *See id*. at 1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting

*Markman v. Westview Instruments, Inc*., 52 F.3d 967, 978 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*, 554 F.3d 1010, 1018 (Fed. Cir. 2009) (quoting *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Teleflex, Inc.*, 299 F.3d at 1325. This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *See Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *See id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc*., 299 F.3d at 1325; *see also Kinetic Concepts, Inc.*, 554 F.3d at 1018. But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp*., 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *See Home Diagnostics, Inc., v. Lifescan, Inc*., 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc*., 388 F.3d at 862); *see also Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1373 (Fed. Cir. 2008). Technical dictionaries and treatises may

help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *See Phillips*, 415 F.3d at 1318. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*; *see also Pozen Inc.,* 2010 WL 2522422, at *3

Finally, it is important to remember that although the specification often describes very specific embodiments of the invention, the Federal Circuit has cautioned against confining the claims to those embodiments. *See Phillips*, 415 F.3d at 1323. The roles of the specification are to "teach and enable those of skill in the art how to make and use the invention and to provide a best mode for doing so. One of the best ways to teach a person of ordinary skill how to make and use the invention is to provide an example of how to practice the invention in a particular case." *Id*. "'[T]he claims of the patent, not its specifications, measure the invention.'" *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc*., 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citation omitted). "Accordingly, particular embodiments appearing in the written description will not be used to limit claim language that has broader effect. And, even where a patent describes only a single embodiment, claims will not be interpreted 'restrictively unless the patentee has demonstrated a clear intention to limit the claim scope 'using words or expressions of manifest exclusion or restriction.'" *Id*. at 1117 (citations omitted).

### III. U.S. PATENT NO. 6,839,149 AND THE CLAIM TERMS AT ISSUE

ColorQuick's '149 patent describes and claims inventions relating generally to the printing industry and, more specifically, to the process of submitting documents for printing, known as the prepress process. *See* '149 patent, attached hereto as Exhibit B, at col. 1, l. 25 – col. 2, l. 33. The inventions of the '149 patent are directed to processes for preparing production data for a print job. *See* '149 patent at col. 2, ll. 36-37.

In one embodiment disclosed in the '149 patent, the production data may include an electronic document and a predetermined area in which the electronic document fits. *See id.* at col. 4, ll. 56-59. The electronic document is defined by a page description language (PDL) and stored in a PDL image file having predetermined physical dimensions. *See id.* at col. 4, ll. 56-60. In that embodiment, a still image proxy of the PDL image file is created, and a static template that defines the predetermined area is created. *See id.* at col. 4, ll. 60-63. Then an image display of the still image proxy is displayed in association with the static template, and the image display is electronically manipulated. *See id.* at col. 5, ll. 2-4. Information about those manipulations are recorded and subsequently used to revise the PDL image file to match it to the manipulations made to the image display of the still image proxy. *See id.* at col. 5, ll. 5-8.

ColorQuick accuses Vistaprint Ltd and OfficeMax of infringing independent claims 1 and 25 and dependent claims 2-5, 9-12, 26-29, 31, and 33-36 of the '149 patent. The terms for which the parties seek construction, six of them agreed, are all contained within claims 1, 2 and 7, which are reproduced below, with the agreed upon terms underlined and the single disputed term **boldfaced and italicized**.

> 1. An automated computer-implemented method of preparing production data for a print job, the production data including an electronic document defined by a page description language (PDL), the electronic document being stored in a PDL image file, the method comprising:
> (a) creating a still image proxy of the PDL image file;
> (b) electronically manipulating an image display of the still image proxy and recording information about the manipulations; and
> (c) using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy.
>
> 2. The method of claim 1 wherein the production data further comprises a predetermined area in which the electronic document must fit, the method further comprising:

> (d) creating a *static template* that defines the predetermined area and displaying the image display of the still image proxy in association with the template, and
>
> step (b) further comprising electronically manipulating the image display of the still image proxy in relation to the template and recording information about the manipulations in relation to the template, and
>
> step (c) further comprising using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy in relation to the template.

'149 patent at col. 11, l. 37 – col. 12, l. 7.

> 7. The method of claim 2 wherein step (a) further comprises dynamically creating the *static template* to represent the predetermined area that the electronic document must fit in a layout of a physical printed document.

*Id.* at col. 12, ll. 27 – 30.

The parties agree to the following claims constructions, all of which besides "dynamically creating" were adopted by the Court in the Kodak case. The parties' respectfully ask the Court to adopt these constructions for this case.

| '149 Patent Claim Term or Phrase | Agreed Construction |
| --- | --- |
| image display | a visual representation shown on a display screen |
| still image proxy | a still computer file, such as a JPEG, GIF, PNG or the like, that substitutes for the PDL image file |
| PDL image file | a computer file containing page description language (PDL) code that defines the appearance of an electronic document when printed |
| electronically manipulating (electronic manipulation) | electronically modifying the appearance of the image display of the still image proxy, or electronically appending production specifications |

| | |
|---|---|
| using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy | using the information about the manipulations to revise the PDL image file with automated software so as to match the PDL image file to the manipulations made to the image display of the still image proxy |
| dynamically creating | creating at run time |

## IV.  ARGUMENT AND AUTHORITIES

The parties' sole dispute is whether the Court's prior construction of "static template" in the Kodak case was correct. ColorQuick asks the Court to adopt its prior construction of "static template" here because it was correct and doing so advances the goal of providing legal certainty of the meaning of the claims.

| The Court's Construction of "Static Template" | Defendants' Proposed Construction of "Static Template" |
|---|---|
| A template shown on a display screen that when set corresponds to a predetermined area in which the electronic document must fit, and is displayed in association with the image display of the still image proxy | A ***fixed*** template ***created at run time*** corresponding to a ***user-specified*** predetermined area in which the electronic document must fit, and is displayed in association with the image display of the still image proxy |

**A.  The Court's Prior Construction of "Static Template" Was Correct.**

The Supreme Court has instructed that one reason why construction of patent claims is exclusively a question of law is the "importance of uniformity in the treatment of a given patent." *Markman*, 517 U.S. at 390. Such uniformity of treatment prevents a "zone of uncertainty" which would discourage enterprise and invention. *Id.* (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). As this Court previously explained in regard to a coordinate court's prior construction of the patent-in-suit:

> Although not binding on this Court, Judge Illston's thoughtful and thorough opinion is nevertheless entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se.* Accordingly, the Court accepts the premise that a uniform treatment of claim construction is desirable.

*Maurice Mitchell Innovations, L.P. v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. Jun. 21, 2006).

Some courts have applied issue preclusion to another court's construction of a claim term. *See Abbott Laboratories v. Dey, L.P.,* 110 F. Supp. 2d 667, 671-72 (N.D.Ill.2000) (applying issue preclusion and further finding that previous construction was not plainly wrong); *see also TM Patents, L.P. v. International Business Machines Corp*., 72 F. Supp. 2d 370, 377 (S.D.N.Y.1999) (applying issue preclusion to previous construction of claim term).

But even if issue preclusion does not apply, a prior construction should be adopted unless it is found to be plainly wrong. *See Visto Corp. v. Research in Motion Ltd*., No. 2:06-CV-181, 2008 WL 1930295, at *7 (E.D. Tex. 2008) (adopting its constructions from previous litigation after concluding that the previous constructions were correct.); *Lamps Plus, Inc. v. Dolan,* No. 3:01-CV-1537, 2003 WL 22435702, at *2 (N.D.Tex. Aug. 26, 2003) (deferring to previous claims construction by a sister court); *Texas Instruments, Inc. v. Linear Technologies Corp.,* 182 F.Supp.2d 580, 589 (E.D.Tex. 2002) ("The Court concurs that deference to judicial decision making, where such deference does not run afoul of fairness considerations, is ideal.").

Here, this Court construed the term "static template" after careful consideration of full briefing and tutorials submitted by ColorQuick and Kodak, as well as a hearing. *See* Mem. Op. & Order at 10-12. The Court's construction gave meaning to the "static" aspect of the "template," while also reflecting the guidance of the claim and the specification that there is a

link between the "static template" and the "image display of the still image proxy." *See id.* The Court's prior construction was legally correct, and should be adopted again here.

**B.     Defendants' Proposed Re-Construction of "Static Template" Is Legally Incorrect.**

Defendants ask the Court to undo its prior construction by adding three limitations that are overly limiting and not supported by the specification.

**1.     The Court Previously Rejected a "Fixed" Limitation.**

Defendants ask the Court to add a limitation that the "static template" be "fixed." But the Court previously rejected that limitation in the Kodak case. Kodak urged the Court to construe this term to be limited to a "fixed frame," and the Court rightly rejected that limitation. *See* Mem. Op. & Order at 10. Further, the addition of a "fixed" limitation is unnecessary because the Court previously determined that the "static template" is "a template shown on a display screen ***that when set*** corresponds to a predetermined area." *Id* (emphasis added). The Court explained that "use of the agreed phrase 'when set' communicates the static aspect of the template without reading out the 'dynamically creat[ed]' aspect discussed in the claims." *Id.*

The word "fixed" does not appear anywhere in the claims. Further, the "fixed" limitation is impermissibly inconsistent with the claim language itself. *See Phillips*, 415 F.3d at 1314-15 (other claims provide guidance about claim meaning). In particular, dependent claim 7 requires that the template be able to be "dynamically created." '149 patent at col. 12, ll. 9-13. But the word "fixed" suggests that the template cannot be "dynamically created," which would impermissibly read dependent claim 3 out of the '149 patent. *See Wright Medical Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) (finding error when the lower court "interpret[ed] an independent claim in a way that [was] inconsistent with a claim which depends from it").

The specification further demonstrates that the "fixed" limitation is unsupportable. *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1237 (Fed. Cir. 2001) (stating that it is improper to read limitations from the written description into a claim). For example, Element 20 of Figure 7 expressly provides that the static template may be "dynamically generated" and element 30 provides for "manipulat[ing] the still image format proxy with respect to the template, *or vice versa*." '149 patent at Figure 7 (emphasis added).

Defendants rely on extrinsic evidence in the form of general English language dictionaries to support their "fixed" limitation. *See* Patent Rule 3-4 Joint Claim Construction & Pre-Hr'g Stmt. at 6 (Dkt. 86). But such extrinsic evidence should be rejected in favor of the clear intrinsic record. *See Phillips*, 415 F.3d at 1317. Thus, as the Court previously decided, because the template can be manipulated with respect to the still image proxy, the template cannot be "fixed" as Defendants argue. *See* Mem. Op. & Order at 10.

### 2. Claim 2 Cannot Have a "Run Time" Limitation Because of Claim 7.

Defendants also seek to add a limitation that the template be "created at run time," which would render claim 7 superfluous because it is claim 7 that provides a further step of "dynamically creating the static template." *Id.* at col. 12, ll. 27-29. The parties have agreed that "dynamically creating" should be construed to mean "creating at run time," which is consistent with guidance in the specification about the preferred embodiment:

> Thus, although the template is fixed or static after creation, ***its actual dimensions are dynamically determined*** based on the area in which the electronic document must fit, and the physical dimensions of the image display of the still image proxy are dynamically determined based on the relative size of the predefined physical dimensions of the PDL image file to the predetermined area in which the electronic document must fit. ***The template is created at run time***.

*Id.* at col. 6, ll. 51-60 (emphasis added). This is the only use of the phrase "run time" in the patent, and it is used only in connection with the embodiment in which the template is

"dynamically created." Claim 2 does not describe the "dynamically created" embodiment, and therefore it cannot be limited to creation at "run time." Indeed, because claim 7—which depends from claim 2—is the first time "dynamically created" is claimed, including that limitation in claim 2 would impermissibly render claim 7 meaningless. *See Kara Tech. Inc. v. Stamps.com Inc.,* 582 F.3d 1341, 1347 (Fed. Cir. 2009) (rejecting construction that made dependent claim identical to independent claim); *see also Wright Medical Tech.*, 122 F.3d at 1445 (independent claims should be read to be consistent with a claim which depends from it).

Additionally, the specification of the '149 patent discloses other embodiments in which the template is not created "at run time," such as where the template may simply represent the predetermined area that an advertisement must fit. *See* '149 patent at col. 4, ll. 13-17. The specification does not specify that the template is created "at run time," but merely that it is created. Thus, Defendants' requirement that the template be created during "run time" is the addition of an improper limitation added presumably to advance their noninfringement or invalidity positions, and does not help a lay juror understand the term. *See Wenger Mfg.,* 239 F.3d at 1237 (it is improper to read limitations from the written description into a claim).

### 3. The "User-Specified" Limitation Finds No Support in the Patent.

Finally, Defendants advocate a limitation that the "static template" must correspond to a "user-specified" predetermined area. But the "user-specified" limitation finds no support in the claim language or in the specification—the words "user-specified" do not appear anywhere in the patent. Further, the addition of these words necessitates further determination of what they mean, i.e., who is the user and how does he specify the predetermined area? Thus, this limitation would only create further complexity and potentially confuse the fact-finder, and must be incorrect. *See Wacom Co. v. Hanvon Corp.*, No. C06-5701-RJB, 2007 WL 4561098, (W.D. Wash. Dec. 21, 2007). As with the other constructions they propose in this case, Defendants

would benefit from the court's guidance in *Wacom* that "claim constructions should be governed by Ockham's Razor, which states that one should not increase, beyond what is necessary, the complexity required to explain anything." *Id.* at *3.

Further, there are examples in the specification where the predetermined area is expressly not "user specified." For example, one kind of "predetermined area" described by the patent is "an area of purchased advertisement space." *See* '149 patent at col. 4, ll. 15-17; col. 12, ll. 32-34. The patent does not require that this "advertisement space" be "user-specified," depending on what "user-specified" means, but suggests that it is not. For example, the specification provides that "Fig. 1 shows a display screen for creating an advertisement (ad) specification for ad space," and that "[t]his step would typically be ***performed by an administrator of the service***." *Id.* at col. 5, ll. 43-46 (emphasis added). The patent further explains that "[i]n the example wherein the static template is a purchased ad space, the permissible dimension changes ***must be pre-programmed*** in coordination with the publication that the ad space will appear." *Id.* at col. 9, ll. 27-30. Thus, the patent suggests that this pre-programming could be done by a so-called "user" or by the "administrator of the service."

Thus, this unsupported limitation is impermissibly made from whole-cloth, presumably with the sole purpose of supporting later noninfringement and invalidity arguments. And to the extent Defendants wish to bootstrap, however vaguely, a limitation from just one disclosed embodiment into the scope of dependent claim 2, the Court should reject that attempt. *See Innova/Pure Water, Inc.*, 381 F.3d at 1115 ("Accordingly, particular embodiments appearing in the written description will not be used to limit claim language that has broader effect.").

## V. CONCLUSION

As courts routinely do, this Court should adopt its previous construction of the claims of the '149 patent with respect to the agreed-upon terms and the single disputed term, "static template."

Dated: August 23, 2010.                    Respectfully submitted,

    */s/ Justin B. Kimble (with permission)*
Michael W. Shore
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
Derek N Johnson
State Bar No. 24060027
**SHORE CHAN BRAGALONE DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
(214) 593-9110 Telephone
(214) 593-9111 Facsimile

ATTORNEYS FOR PLAINTIFF
COLORQUICK, L.L.C.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-f(a)(3) on August 23, 2010.

    */s/ Justin B. Kimble*
Justin B. Kimble