**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| COLORQUICK, L.L.C., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | No. 6:09-CV-323 |
| v. | § | |
| | § | JURY DEMANDED |
| VISTAPRINT LIMITED, and | § | |
| OFFICEMAX INCORPORATED, | § | |
| | § | |
| *Defendants.* | § | |

**COLORQUICK L.L.C.'S REPLY IN SUPPORT OF ITS
MOTION TO DISQUALIFY DEFENDANTS' CONSULTING EXPERT,
MOTION FOR PROTECTIVE ORDER, AND MOTION TO COMPEL**

Michael W. Shore
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
Derek N. Johnson
State Bar No. 24060027
**SHORE CHAN BRAGALONE
DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
(214) 593-9110 Telephone
(214) 593-9111 Facsimile

ATTORNEYS FOR PLAINTIFF
COLORQUICK, L.L.C.

## I. INTRODUCTION

In their response, Defendants do not dispute that David Zwang expressly promised to keep all communications and information received from ColorQuick confidential, and accepted and reviewed confidential attorney work product relevant to the patent-in-suit in this litigation. Because Mr. Zwang will likely disclose, or has already disclosed, this valuable confidential information to Defendants, as it now appears he did in ColorQuick's litigation against Kodak, the Court should grant ColorQuick's motion in its entirety. Further, Defendants have not sufficiently shown that the alleged difficulty in retaining another suitable expert outweighs the potential harm to ColorQuick caused by Defendants use of Mr. Zwang.

## II. ARGUMENTS AND AUTHORITIES

**A. Mr. Zwang Must Be Disqualified Because He Received Confidential and Privileged Information During His Prior Confidential Relationship with ColorQuick**

**1. ColorQuick had an Objectively Reasonable Belief that a Confidential Relationship Existed with Mr. Zwang**

Defendants mischaracterize the facts by confining ColorQuick's relationship with Mr. Zwang to a mere three telephone conversations that spanned only 90 minutes.[1] As detailed in ColorQuick's motion, the parties' relationship spanned over ***three months*** and involved nearly 20 e-mail communications as well as the three telephone conferences. Defendants ignore the importance of these e-mails,[2] which show that ColorQuick and Mr. Zwang maintained steady communication over the entire period. Instead, they disingenuously claim that "virtually all of the e-mails relate solely to identifying a time and location" for the July 11 meeting "that,

---

[1] *See* Dkt. No. 99 at 8.
[2] The only e-mail acknowledged by Defendants is Mr. Zwang's June 6 e-mail. *Id.* at 9-10.

---

ultimately, never occurred."[3] However, at least **half** of these e-mails had nothing to do with the scheduling of that meeting. Further, that meeting did in fact occur, just not *in person*.[4]

ColorQuick's relationship with Mr. Zwang hardly "consisted of informal discussions relating to a completely different litigation."[5] The parties' ongoing communications involved three patents, each of which concerns digital printing technology, including the '149 patent at issue ***in this litigation***. Defendants misleadingly attempt to isolate the parties' discussions involving the '149 patent to the September 8 conference call.[6] However, even Mr. Zwang acknowledges that the validity of the '149 patent was discussed during the July 11 meeting.[7] More importantly, Mr. Zwang's relationship with ColorQuick was predicated on the analysis of ***all three patents***. Thus, Mr. Zwang's conduct and discussion concerning the other two patents evidences the depth of the parties' relationship, which cannot be compared, as Defendants attempt, to cases where the parties met just once for an initial consultation.[8]

Defendants assert that ColorQuick could not have reasonably believed that a confidential relationship existed based on Mr. Zwang's June 6 e-mail because it set forth the "terms of a prospective engagement."[9] However, Mr. Zwang's Memorandum of Understanding hardly provided clear language of a merely prospective term sheet. Mr. Zwang's language in relation to the confidentiality provisions strongly suggests that he intended to be bound by his

---

[3] *Id.* at 8-10 & n.4.
[4] It strains reason to accept that ColorQuick's relationship with Mr. Zwang was any less intimate merely because the parties did not meet face to face, especially where they exchanged ten e-mails in advance of the meeting, and Mr. Chan was only unable to make the appointment because his earlier meeting ran late.
[5] *Id.* at 8.
[6] *Id.* at 10 ("In fact, with the exception of the final, fifteen-minute conference call, virtually all of Mr. Zwang's discussions with ColorQuick's counsel related to introductory information or the two ColorQuick patents unrelated to this action.").
[7] Dkt. No. 99-1 at ¶ 9.
[8] *See, e.g.*, *Mays v. Reassure Am. Life Ins. Co.*, 293 F. Supp. 2d 954, 957 (E.D. Ark. 2003).
[9] Dkt. No. 99 at 9.

---

confidentiality promises, regardless of whether he was later retained.[10] In the face of this clear language guaranteeing strict confidentiality for all future communications, it was unnecessary for Mr. Chan to confirm that Mr. Zwang had been formerly retained as a consultant and paid.[11]

ColorQuick's "termination of all communications" with Mr. Zwang does not "belie its claim of a confidential relationship."[12] As discussed, Mr. Zwang's confidentiality promises were not conditioned on his retention as an expert in the Kodak case. Thus, it is unclear how ColorQuick's decision not to retain Mr. Zwang terminated their confidential relationship, especially considering that Mr. Zwang never repudiated his confidentiality promises.[13] Even if ColorQuick effectively terminated the parties' confidential relationship by ending communications with Mr. Zwang, it was only *after* Mr. Zwang received ColorQuick's privileged and confidential information, which he is still obliged to keep confidential.[14]

### 3. Mr. Zwang Received Confidential Information Relevant to this Litigation

Contrary to Defendants' claims, the Kodak claim chart does not contain "purely technical" product data.[15] Rather, it reveals counsel's mental impressions regarding the value and propriety of a case against Kodak for infringement of specific claims the '149 patent,

---

[10] To this end, Mr. Zwang's ***intent*** is irrelevant because reasonableness is viewed from counsel's perspective. *See Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1182 (5th Cir. 1996).

[11] Importantly, as discussed in ColorQuick's motion, no formal agreement is necessary to establish the first prong of the disqualification standard. Defendants' reliance on *Northbrook Digital LLC v. Vendio Services., Inc.*, Civil No. 07-2250, 2009 WL 5908005, at *3 (D. Minn. Aug. 26, 2009), *Coates v. Duffer's Golf Center, Inc.*, Civil Action No. 03-11968-GAO, 2007 WL 1289890, at *1 (D. Mass. May 2, 2007), *Harvey v. Jones*, No. C05-1170RSM, 2006 WL 1889314, at *2 (W.D. Wash. July 7, 2006), *Syngenta Seeds, Inc. v. Monsanto Co.*, No. 02-1331-SLR, 2004 WL 2223252, at *3 (D. Del. Sept. 27, 2004), *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1096 (N.D. Cal. 2004), and *Larson v. Rourick*, 284 F. Supp. 2d 1155, 1158 (N.D. Iowa 2003), is thus misplaced because the consultants in those cases did not make, or had not yet made, any promises of confidentiality with counsel.

[12] Dkt. No. 99 at 10.

[13] *See generally* Dkt. No. 99-1. Notwithstanding, ColorQuick had various reasons for its decision not to call Mr. Zwang to testify, including his lack of experience as a testifying expert and that ColorQuick had shared pre-suit strategy with him that would have become discoverable.

[14] *Coates*, 2007 WL 1289890, at *1, is also inapposite because the parties did not exchange any confidential information prior to terminating their relationship.

[15] Dkt. No. 99 at 11. *WesternGeco LLC v. Ion Geophysical Corp.*, No. 09-cv-1827, 2010 WL 2266610, at *3 (S.D. Tex. June 2, 2010), *Hewlett-Packard*, 330 F. Supp. 2d at 1097, and *Mayer v. Dell*, 139 F.R.D. 1, 3-4 (D.D.C. 1991), are inapposite because they did not involve the disclosure of counsel's mental impressions or work product.

including a preliminary infringement analysis for certain Kodak products.[16] Because the Kodak case and this litigation are substantially similar,[17] the information is clearly relevant.[18] There is nothing "vague and conclusory" about Mr. Chan's affidavit,[19] which describes, in at least as much detail as Mr. Zwang,[20] the extent of the parties' phone discussions on June 9, July 11, and September 8.[21] Importantly, Mr. Zwang does not dispute that, as a result of his discussions with ColorQuick, he obtained knowledge of ColorQuick's litigation strategy, the kinds of experts that ColorQuick expected to retain, and the anticipated defenses.[22] Nor has all of the information communicated to Mr. Zwang become public as a result of the litigation—the parties discussions and the claim chart concerned claims that have not been raised in *either case*.[23]

---

[16] ColorQuick cannot be faulted for failing to detail the ***highly confidential and privileged*** contents of the claim chart sent to Mr. Zwang. Doing so would vitiate the purpose of its motion to disqualify, which is why the document was submitted for *in camera* review only. See *Koch Refining*, 85 F.3d at 1182.

[17] Defendants' do not even attempt to rebut ColorQuick's argument that the cases involve the same subject matter and have "voluminous similarities." See Dkt. No. 99 at 12-13.

[18] *See Nike, Inc. v. Adidas Am., Inc.*, No. 9:06-CV-43, 2006 WL 5111106, at *2 (E.D. Tex. Sept. 29, 2006) (finding that confidential information regarding substantially similar case involving different patent claims was relevant). *Acqis LLC v. Appro International, Inc.*, No. 6:09-CV-148-LED (Dkt. No. 300 at 4-5) (E.D. Tex. July 14, 2010), and *Dolby Laboratories v. Lucent Technologies Inc.*, No. C 01-20709 JF (RS), 2003 WL 25686536, at *2 (N.D. Cal. Mar. 17, 2003), are inapposite because they did not involve a consultant's prior knowledge of confidential and privileged attorney work product involving the same patents in substantially similar litigation.

[19] Since ColorQuick did not ultimately retain Mr. Zwang as its testifying expert, it could not be in possession of all of his communications.

[20] Notably, there are inconsistencies in Mr. Zwang's version of events, which initially claimed that he declined to assist ColorQuick on ***July 11***, not September 8, and he further admits that he reviewed the confidential claim chart, which would have been completely unnecessary given his alleged opinion on validity. Dkt. No. 99-1 at ¶ 14.

[21] Defendants improperly attempt to heighten the burden of proof applicable for disqualification cases, asserting that "the party seeking disqualification bears a '***heavy burden***' that may not be met with conclusory assertions or self-serving remarks in attorney affidavits." Dkt. No. 99 at 6, 12 (emphasis added). However, this Court is bound by *Koch Refining*, which does not require a party seeking disqualification to demonstrate any extraordinary burden of proof beyond a preponderance of the evidence. *See Koch Refining*, 85 F.3d at 1181-83; *see also Grogan v. Garner*, 498 U.S. 279, 286 (1991) (stating that the preponderance-of-the-evidence standard is presumed to apply in civil actions unless "particularly important individual interests or rights are at stake").

[22] *See* Dkt. No. 99-1 at ¶¶ 3, 9, 13. Mr. Zwang ***admits*** that he had knowledge of ColorQuick's views regarding the strengths and weaknesses of its case. *Id.* at ¶ 13 (noting that Mr. Chan "stat[ed] that he believed the patent to be valid and that he believed Kodak was infringing").

[23] Defendants do not dispute that the claim chart constitutes confidential work product, rather than "basic facts" concerning the litigation. *See Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1249 (E.D. Va. 1991) ("While the value of the disclosures is debatable, their essential work-product nature is not."). Thus, *Larson*, 284 F. Supp. 2d at 1158, *Hewlett-Packard*, 330 F. Supp. 2d at 1097, *Lost Arrow Corp. v. Dedola International, Inc.*, No. CV 03-05797 WJR (RZx), 2005 WL 6124199, at *3 (C.D. Cal. June 16, 2005), and *Goldman v. Bracewell & Patterson, L.L.P.*, No. 6:04-cv-725-Orl-18JGG, 2005 WL 5960357, at *2 (M.D. Fla. May 9, 2005), are distinguishable.

---

### 4. Policy Considerations Weigh In Favor of Disqualification

Although Defendants assert that locating a qualified expert for this case has been "exceedingly difficult," they could simply contact the Rochester Institute of Technology's College of Imaging Arts and Sciences and ask for another expert referral.[24] The three-month window remaining until the deadline for expert reports should provide Defendants with enough time to locate a second expert even using their prior search firm, which identified Mr. Zwang as well as three other potential candidates in that time.[25]

### B. ColorQuick's Motion for Protective Order and Motion to Compel Must Be Granted

ColorQuick's motions for protective order and to compel are neither "outlandish" nor based on "unbridled speculation."[26] A party's "interest in preserving the confidentiality . . . is sufficient 'good cause'" for a protective order.[27] Mr. Zwang obliged himself to keep all information gained as a result of his contacts with ColorQuick confidential. Yet, he continues to assist ColorQuick's opponents in litigation regarding the same subject matter. The likelihood that such confidential information will be used against ColorQuick is great, given its value to Defendants' case.[28] The Court's review will not be a "fool's errand"—a cursory examination should make clear whether Defendants discussed the prior Kodak litigation with Mr. Zwang.

### III. CONCLUSION

Accordingly, ColorQuick respectfully requests that the Court grant its Motion to Disqualify Defendants' Consulting Expert, Motion for Protective Order, and Motion to Compel.

---

[24] This is how ColorQuick originally located Mr. Zwang. Dkt. No. 94-1 at ¶2. Rochester Institute of Technology's College of Imaging Arts and Scences is replete with experts in the field. *See* http://cias.rit.edu/.
[25] Dkt. No. 99-2 at ¶¶ 1-5.
[26] Dkt. No. 99 at 14.
[27] *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 685 (5th Cir. 1985).
[28] Defendants did admit that they had a prior relationship with ColorQuick at the parties' meet-and-confer. They were thus aware that Mr. Zwang had specifically advised ColorQuick on validity and infringement, which are the very type of communications that the consulting expert privilege is intended to protect.

---

Dated: September 13, 2010.   Respectfully submitted,

*/s/ Alfonso Garcia Chan*
Michael W. Shore
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
Derek N. Johnson
State Bar No. 24060027
**SHORE CHAN BRAGALONE DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
(214) 593-9110 Telephone
(214) 593-9111 Facsimile

**ATTORNEYS FOR PLAINTIFF COLORQUICK, L.L.C.**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 13, 2010.

                                        */s/ Justin B. Kimble*
                                        Justin B. Kimble