# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

|  |  |
|---|---|
| ColorQuick, L.L.C.,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>Vistaprint Limited, and<br>OfficeMax Incorporated,<br><br>　　　　　　　Defendants. | Civil Action No. 6:09-cv-323-LED |

## MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

# TABLE OF CONTENTS

**Page**

I.      ISSUES FOR DECISION .................................................................................. 1

II.     INTRODUCTION ........................................................................................... 1

III.    BACKGROUND ............................................................................................ 2

      A.     Procedural History ............................................................................... 2

IV.     UNDISPUTED FACTS ................................................................................... 2

V.      LEGAL STANDARD...................................................................................... 7

      A.     Summary Judgment Standard ................................................................ 7

      B.     Standard for Anticipation...................................................................... 8

            1.     Public Use - § 102(b) ............................................................... 8

            2.     Prior Invention - § 102(g)(2)..................................................... 9

VI.     ARGUMENT ............................................................................................... 10

      A.     Vistaprint.com Anticipates the '149 Patent Because It Was in Public Use
            More Than One Year Before the Filing Date ...................................... 11

            1.     Vistaprint.com Was Publicly Used Before the Critical Date.................. 11

            2.     As a Matter of Law, Vistaprint.com Discloses All Limitations of
                 the Asserted Claims ............................................................... 12

      B.     Vistaprint.com Anticipates Because It Was Made in the United States
            Before the Invention Claimed ........................................................... 13

            1.     Vistaprint Made Vistaprint.com in the U.S. Prior to Mr. Herr's
                 Invention ............................................................................. 13

             2.     Vistaprint's Public, Commercial Use of Vistaprint.com Negates
                 Any Intention to Abandon, Suppress, or Conceal the Invention ............. 14

             3.     ColorQuick Admits Vistaprint.com Discloses All Limitations of
                 the Asserted Claims ............................................................... 15

VII.    CONCLUSION............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Adenta GMBH v. OrthoArm, Inc.*,
501 F.3d 1364 (Fed. Cir. 2007)..................................................................................9, 11

*AdvanceMe Inc. v. RapidPay, LLC*,
509 F. Supp. 2d 593 (E.D. Tex. 2007) (Davis, J.) ....................................................8

*Am. Seating Co. v. USSC Group, Inc.*,
514 F.3d 1262 (Fed. Cir. 2008)..................................................................................9, 11

*Benedict v. Gen. Motors Corp.*,
184 F. Supp. 2d 1197 (N.D. Fla. 2002).....................................................................15

*C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*,
911 F.2d 670 (Fed. Cir. 1990)....................................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................................7

*ColorQuick, L.L.C. v. Eastman Kodak Co.*,
Case No. 6:06-cv-390 (E.D. Tex.) .............................................................................2

*Cooper v. Goldfarb*,
154 F.3d 1321 (Fed. Cir. 1998)..................................................................................9

*Cummings v. Adidas USA*,
716 F. Supp. 2d 323 (S.D.N.Y. 2010)......................................................................8, 11, 12

*Desper Prods., Inc. v. QSound Labs, Inc.*,
157 F.3d 1325 (Fed. Cir. 1998)..................................................................................8

*DSL Dynamic Scis., Ltd. v. Union Switch & Signal, Inc.*,
928 F.2d 1122 (Fed. Cir. 1991)..................................................................................9, 13

*Dunlop Holdings Ltd. v. RAM Golf Corp.*,
524 F.2d 33 (7th Cir. 1975) .......................................................................................10, 14, 15

*Evans Cooling Sys., Inc. v. Gen. Motors Corp.*,
125 F.3d 1448 (Fed. Cir. 1997)..................................................................................8, 12, 15

*Friction Div. Prods., Inc. v. E. I. Du Pont de Nemours & Co.*,
658 F. Supp. 998 (D. Del. 1987).................................................................................10, 14

*Epstein*, In re
    32 F.3d 1559 (Fed. Cir. 1994) ................................................................................9

*Katz*, In re,
    687 F.2d 450 (C.C.P.A. 1982) ............................................................................9, 13

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005) ..............................................................................11

*Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
    586 F.3d 1376 (Fed. Cir. 2009) .............................................................................8, 9

*Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
    Civ. A. No. 9:07-CV-46, 2008 WL 7842052, at *4-5 (E.D. Tex. Aug. 27, 2008) ............ 9, 12

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.*,
    787 F.2d 1577 (Fed. Cir. 1986) ................................................................................9

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) .............................................................................9, 12

*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*,
    298 F.3d 1290 (Fed. Cir. 2002) ................................................................................8

*Pall Corp. v. Micron Separations, Inc.*,
    792 F. Supp. 1298 (D. Mass. 1992), *aff'd in part*, 66 F.3d 1211 (Fed. Cir. 1995) .................10

*Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*,
    87 F. Supp. 2d 258 (S.D.N.Y. 2000) .........................................................................11

*Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP*,
    Civ. A. No. 08cv4786, --- F. Supp. 2d ---, 2010 WL 4139043 (E.D. Penn. Oct. 20,
    2010) .....................................................................................................................15

*Thomson S.A. v. Quixote Corp.*,
    166 F.3d 1172 (Fed. Cir. 1999) ..............................................................................10

*Vanmoor v. Wal-Mart Stores, Inc.*,
    201 F.3d 1363 (Fed. Cir. 2000) ........................................................................8, 12, 15

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
    522 F.3d 1348 (Fed. Cir. 2008) .............................................................................8, 9

## STATUTES

35 U.S.C. § 102(a) ......................................................................................................8

35 U.S.C. § 102(b) ............................................................................................... *passim*

35 U.S.C. § 102(g)(2) ................................................................................................1, 9, 13

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 56(a) .........................................................................8

# I.
## ISSUES FOR DECISION

Vistaprint Limited ("Vistaprint") respectfully moves the Court for resolution of the following issues as a matter of law:

1) The public availability and use of the accused Vistaprint.com system as of February 26, 2001, constitutes a public use under 35 U.S.C. § 102(b);

2) The invention claimed in U.S. Patent No. 6,839,149 ("the '149 patent") was, prior to invention by the named inventor, made by Vistaprint in the United States and not abandoned, suppressed, or concealed; and

3) All asserted claims of the '149 patent are invalid under 35 U.S.C. § 102(b) and 35 U.S.C. § 102 (g)(2) because ColorQuick alleged that Vistaprint.com infringes.

# II.
## INTRODUCTION

ColorQuick accused the prior art of infringement, and accordingly, its patent is invalid as a matter of law.   Specifically, ColorQuick alleges that current and prior versions of Vistaprint.com infringe.  Accordingly, there is no factual dispute that the pre-critical date version of Vistaprint.com performs the claimed method.  Vistaprint.com Release 5.1 was in public and commercial use as of at least February 26, 2001 – more than one year before ColorQuick filed the application that ultimately issued as the '149 patent.   ColorQuick contends that Vistaprint.com practices the claimed method, and Vistaprint did so openly and publicly in the United States prior to the '149 patent's critical date, thus invalidating the patent under both 35 U.S.C. §§ 102(b) and (g)(2).  ColorQuick's own infringement contentions and expert opinion admit the alleged operation of the prior use Vistaprint system.  Accordingly, Vistaprint is entitled to summary judgment of invalidity.

**III.**

**BACKGROUND**

**A.     Procedural History**

ColorQuick filed the above-captioned action against Vistaprint and OfficeMax on July 21, 2009.  Vistaprint and OfficeMax filed their answers, and Vistaprint filed Counterclaims for declarations of non-infringement and invalidity on November 4, 2009.  The Court previously construed the claims of the '149 patent in *ColorQuick, L.L.C. v. Eastman Kodak Co.*, Case No. 6:06-cv-390 (E.D. Tex.), and the parties agreed to the Court's prior constructions in the Amended Patent Rule 4-3 Joint Claim Construction and Prehearing Statement, filed September 7, 2010 (Dkt #100).  Accordingly, no *Markman* hearing was held in this action.

ColorQuick served its P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions on January 8, 2010.  By stipulation, ColorQuick served amended infringement contentions on September 29, 2010.  Just over a month later, ColorQuick again sought to amend its infringement contentions to add an additional theory of infringement.  Vistaprint opposed, and on January 21, 2011, the Court granted ColorQuick leave to serve its Supplemental First Amended Infringement Contentions.  (Order (Dkt #123).)

**IV.**

**UNDISPUTED FACTS**

1.      The '149 patent was filed on March 21, 2002.  (ColorQuick First Am. Compl. (Dkt. #111) ("Compl."), Ex. A.)

2.      March 21, 2001 is the critical date of the '149 patent for purposes of prior art under 35 U.S.C. § 102(b).

3.      Vistaprint is an online printing company that offers customers the ability to design and order custom print products through its website at Vistaprint.com.  (Declaration of Brian Wikner ("Wikner Decl.") ¶ 2, Ex. 1 (Wong Infringement Report at 33-35).)  Using a web

browser, a Vistaprint customer can interact with Vistaprint's website and template-based Studio software to create custom designs to be printed on a variety of products. (*Id.*)  In creating a design, the customer has the option to upload his or her own image file for use in the design. (*Id.* at 35-37.)

4.      ColorQuick alleges that Vistaprint.com performs the recited steps of the asserted method claims of the '149 patent. (*See* Wikner Decl. ¶ 3, Ex. 2 (ColorQuick Suppl. Am. P.R. 3-1 Disclosure (Nov. 22, 2010) ("ColorQuick Supp. Contentions"), Ex. A).)

5.      In May 2000, Vistaprint.com first launched a publicly accessible pilot of Vistaprint.com; the official launch was about one month later. (Wikner Decl. ¶ 4, Ex. 3 (Dep. of Sebastien Coursol ("Coursol Dep.") (Jan. 6, 2011) at 21:7-23); *id.* ¶ 5, Ex. 4 (Dep. of Vistaprint Limited (Amembal Satish Pai) ("Pai Dep.") (Nov. 2, 2010) at 69:1-16.)  This was the year before the '149 patent critical date.

6.      Initially Vistaprint.com allowed customers to upload only raster-format (e.g., JPEG, TIFF) images for use in creating designs in Vistaprint's customer-facing, browser-based VistaStudio software (now referred to as "Old Studio") as early as the of summer 2000. (Wikner Decl. ¶ 4, Ex. 3 (Coursol Dep. at 24:2-19); *id.* ¶ 5, Ex. 4 (Pai Dep. at 29:3-8).)

7.      Vistaprint continued to improve and expand its services and product offerings, releasing upgraded versions of its website software approximately every two or three weeks. (Wikner Decl. ¶ 6, Ex. 5 (Dep. of Anatoliy V. Tsykora ("Tsykora Dep.") at 44:6-21).)

8.      On February 26, 2001, Release 5.1 of the software that operated Vistaprint.com and its back-end systems was released. (Wikner Decl. ¶ 4, Ex. 3 (Coursol Dep. at 24:20-25:11); Coursol Decl. ¶¶ 6-10, Exs. 1 & 2.)  This was about one month before the critical date.

9.      Release 5.1 introduced a back-end software module known as PAPICS, which allowed Vistaprint to support the upload of files in additional formats, including Portable Document Format ("PDF"), Encapsulated PostScript ("EPS"), and PostScript ("PS") files. (Coursol Decl. ¶¶ 8-9, Ex. 1 (COURSOL000056); Wikner Decl. ¶ 6, Ex. 5 (Tsykora Dep. at 41:10-13; 42:12-43:8); *id.* ¶ 5, Ex. 4 (Pai Dep. at 27:12-28:9); *id.* ¶ 4, Ex. 3 (Coursol Dep. at 79:4-13).)

10.     PDF, EPS, and PS files are "Page Description Language (PDL)" files.  (Wikner Decl. ¶ 3, Ex. 2 (ColorQuick Supp. Am. P.R. 3-1 Disclosure, Ex. A at 2); *id.* ¶ 7, Ex. 6 (Dep. of Jeremy Herr ("Herr Dep.") at 133:3-7); *id.* ¶ 5, Ex. 4 (Pai Dep. at 191:3-4).)

11.     PAPICS was responsible for validating, processing, and converting customer-uploaded image files into file types that Vistaprint.com's internal systems accepted.  (Coursol Decl. ¶ 9, Ex. 1 (COURSOL000056)); Wikner Decl. ¶ 6, Ex. 5 (Tsykora Dep. at 29:2-21; 31:18-32:4.)

12.     PAPICS is still used in the current release of the Vistaprint system.  (Wikner Decl. ¶ 2, Ex. 1 (Wong Infringement Report ¶ 66); Wikner Decl. ¶ 8, Ex. 7 (Dep. of Martijn Stevenson ("Stevenson Dep.") at 124:3-12).)

13.     On February 26, 2001, Vistaprint.com began allowing customers to upload their own PDL-type files, including PDF and PostScript files, with the release of version 5.1 of Vistaprint.com.  (Coursol Decl. ¶¶ 6-9, Exs. 1 & 2; Wikner Decl. ¶ 4, Ex. 3 (Coursol Dep. at 24:20-25:11; 79:4-13); *id.* ¶ 6, Ex. 5 (Tsykora Dep. at 42:12-43:8).)

14.     The Advanced SSR Studio (or "New Studio") began replacing VistaStudio (now referred to as "Old Studio"), which had been in operation since 2000, in late 2006.  (Wikner

Decl. ¶ 5, Ex. 4 (Pai Dep. at 69:1-16; 70:10-22); *id.* ¶ 4, Ex. 3 (Coursol Dep. at 22:13-23:24); Stevenson Decl. ¶ 7, Ex. 2 ("VistaWiki, Old Studio").)

15.     Old Studio and the Advanced SSR Studio operate identically with respect to the features claimed by the '149 patent.  (Wikner Decl. ¶ 9, Ex. 8 (Wong  Supp. Expert Report (Feb. 17, 2011) ¶¶ 4-6 & n.6 ("the switch from older Studio versions to the Advanced SSR Studio does not change how Vistaprint infringes the '149 patent."; "The differences between the two [Studio versions], however, are irrelevant to my analysis of infringement because both infringe the '149 by allowing manipulations of the image display of a proxy image of a PDL image file.")); *id.* ¶ 10, Ex. 9 (Ratliff Rebuttal-Supplemental Report (Feb. 17, 2011) ¶ 16); Stevenson Decl. ¶ 7, Ex. 2 ("VistaWiki, Old Studio").)

16.     Both before and after the critical date, Vistaprint systems created a proxy image file from a high-resolution page description language file (PDL) that was generated from a customer upload.  (Wikner Decl. ¶ 3, Ex. 2 (ColorQuick Supp. Contentions, Ex. A at 2, 9 (identifying both pre- and post-critical date Vistaprint documents as evidence that Vistaprint.com performs the claim limitation).)

17.     By March 2001, before the critical date, competitive analysis reports prepared by two consulting firms, CAP Ventures and Raine Consulting, Inc., were publicly accessible from the "About Us" and "Press Room" web pages on Vistaprint.com.  (Decl. of Sven Ripper ¶¶ 3-7.) These reports described Vistaprint's competitive advantage in the printing industry as of July 2000 and provided a discussion of Vistaprint technologies contributing to its success.  (*Id.* ¶¶ 5-7, Ex. 1 ("CAP Ventures: VistaPrint.com Technologies: Market Differentiators" (July 7, 2000) at 4-7), Ex. 2 ("Raine Consulting Inc., VistaPrint.com: Leading the Way in Process Redesign E-

Printing" (July 2000) at 7-8).)   These reports included descriptions of VistaStudio and VistaBridge, and Vistaprint's use of XML, PDF, and PostScript technologies.  (*Id.*)

18.     By October 31, 2000, Vistaprint.com had received over 50,000 paid orders from customers in the United States.  (Wikner Decl. ¶ 11, Ex. 10 ("Vistaprint.com Shatters 50,000 Paid Customer Mark" (October 31, 2000).)

19.     Between February 26, 2001 (when Release 5.1 was implemented) and March 21, 2001, Vistaprint.com received over 2,200 U.S. orders from customers who uploaded images for use in their print designs and completed paid orders through Vistaprint.com.  (Stevenson Decl. ¶¶ 5-6, Ex. 1.)

20.     ColorQuick's infringement allegations apply to the Advanced SSR Studio and Old Studio versions of Vistaprint.com.  (Wikner Decl. ¶ 9, Ex. 8 (Wong Supp. Report at 1-4); *id.* ¶ 10, Ex. 9 (Ratliff Rebuttal-Supp. Expert Report ¶ 16); *id.* ¶ 3, Ex. 2 (ColorQuick's Supp. Am. Contentions); Compl. ¶¶ 10-11).)

21.     Jeremy Herr, the named inventor of the '149 patent, conceived of the inventions covered by the claims of the patent by May 2001, and developed a prototype of the invention by August 2001.  (Wikner Decl. ¶ 12, Ex. 11 (ColorQuick's First Am. Objections and Responses to Def. Vistaprint Limited's Interrogatory No. 1); *id.* ¶ 7, Ex. 6 (Herr Dep. at 60:3-10).)

22.     At his deposition in the prior *ColorQuick LLC v. Eastman Kodak Co.* action, Mr. Herr testified that his earliest recollection of work on the project that resulted in a prototype of the '149 patent invention occurred in April 2001.  (Wikner Decl. ¶ 13, Ex. 12 (Dep. of Jeremy Herr ("Herr Dep. (*Kodak*)") at 27:2-5).)

23.     Vistaprint is the assignee of U.S. Patent No. 6,650,433 to Keane et al. ("Keane Patent"), which relates to systems for managing print jobs.  (Wikner Decl. ¶ 14, Ex. 13 (Keane

Patent).)  The application that issued as the Keane Patent was filed on April 25, 2000.  (*Id.*)  The Keane Patent discloses embodiments of an online print system, including a browser-based Customer Interface (*id.* 10:24-42), Website Studio (*id.* 10:45-14:11), Purchase Wizard (*id.* 14:12-15:8), Web Server (*id.* 15:10-17), Data Storage (*id.* 15:19-17:10), and Order Queuing, Prepress Aggregation and Data Conversion (*id.* 17:10-18:27), Backend Printing Interface (*id.* 18:29-63), Post-press Processing (*id.* 18:64-19:10), among other features.

24.     Vistaprint.com practices embodiments of the Keane Patent, including Studio and VistaBridge.  (Wikner Decl. ¶ 4, Ex. 3 (Coursol Dep. 113:24-116:7).)

25.     The following timeline summarizes the relevant dates identified above:



# V.
## LEGAL STANDARD

## A.     <u>Summary Judgment Standard</u>

Summary judgment motions are designed to dispose of specious claims and to avoid useless and time-consuming trials.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary

judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Summary judgment is as appropriate in a patent case as it is in any other case." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (quoting *C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990)). "Anticipation may be resolved on summary judgment if there is no genuine issue of material fact." *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1356-57 (Fed. Cir. 2008).

Vistaprint bears the burden of proving invalidity by clear and convincing evidence. *Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1380 (Fed. Cir. 2009). This burden is met, however, when a patentee alleges, as the sole basis of the patentee's complaint, that the proffered anticipating prior art infringes. *See Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000); *see also Cummings v. Adidas USA*, 716 F. Supp. 2d 323, 331-32 (S.D.N.Y. 2010) (finding burden met by complaint that "categorically alleges" that a product infringes and was not limited to particular product models, despite having discovery of such information).

**B.**   **Standard for Anticipation**

    **1.**   **Public Use - § 102(b)**

If the claimed method was in public use in the United States more than one year prior to the filing date of the patent, the claim is invalid. 35 U.S.C. § 102(b). "For a method or system to be in 'public use' within the meaning of 35 U.S.C. § 102(a) or (b), the method or system must be used in the ordinary course of business without active efforts to conceal its operation." *AdvanceMe Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 608 (E.D. Tex. 2007) (Davis, J.); *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297-1300 (Fed. Cir. 2002) ("The

statutory phrase 'public use' does not necessarily mean open and visible in the ordinary sense; it includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor."); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997); *Adenta GMBH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007).  A public use does not have to be enabling to invalidate under § 102(b); rather, the inquiry is whether the public use or sale "relates to a device that *embodies* the invention." *Zenith Elecs. Corp.*, 522 F.3d at 1356 (quoting *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1583 (Fed. Cir. 1986)); *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994); *see also Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, Civ. A. No. 9:07-CV-46, 2008 WL 7842052, at *4-5 (E.D. Tex. Aug. 27, 2008), *aff'd*, 586 F.3d 1376.  Whether a patent is invalid for public use is a question of law based on underlying facts.  *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008).

### 2.       Prior Invention - § 102(g)(2)

A patent is also invalid if, before the invention by the inventor, "the invention was made in [the United States] by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g)(2).  "Making" the invention under § 102(g) requires either actual reduction to practice or constructive reduction to practice by filing a patent application.  *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982).  To demonstrate actual reduction to practice, an inventor must prove that he/she constructed an embodiment or performed a process that met all limitations of the claim, and determined that the invention would work for the intended purpose.  *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998).  While a working prototype is required, "there is certainly no requirement that an invention, when tested, be in a commercially satisfactory stage of development in order to reduce the invention to practice."  *See DSL Dynamic Scis., Ltd. v. Union Switch & Signal, Inc.*, 928 F.2d 1122, 1126 (Fed. Cir. 1991).  When relying on the

inventor's testimony to prove actual reduction to practice, corroborating evidence is required. *Thomson S.A. v. Quixote Corp.*, 166 F.3d 1172, 1174-75 (Fed. Cir. 1999).

To avoid a finding that a prior invention was abandoned, suppressed or concealed, "the prior inventor must take affirmative steps to make the invention publicly known." *Friction Div. Prods., Inc. v. E. I. Du Pont de Nemours & Co.*, 658 F. Supp. 998, 1013-14 (D. Del. 1987); *see also Pall Corp. v. Micron Separations, Inc.*, 792 F. Supp. 1298, 1306 (D. Mass. 1992), *aff'd in part*, 66 F.3d 1211 (Fed. Cir. 1995) (following *Friction*).  This requires only "that the public enjoy the *benefits* or the use of the prior invention." *Friction*, 658 F. Supp. at 1013-14; *see also Dunlop Holdings Ltd. v. RAM Golf Corp.*, 524 F.2d 33, 37 (7th Cir. 1975).  "Public use of the invention, without disclosing the details of it, is sufficient to negate any intention to abandon, suppress or conceal," and "[e]ngaging in activities designed to bring about public or commercial use of the invention is also sufficient." *Friction*, 658 F. Supp. at 1014.

## VI.
### ARGUMENT

ColorQuick claims that Vistaprint.com infringes claims 1-5, 7, 9-12, 25-29, 31, and 33-36 of the '149 patent.  Accordingly, there is no dispute of material fact that ColorQuick's infringement allegations include Release 5.1 of Vistaprint.com, which was launched on February 26, 2001, one month before the critical date.  The only dispute between the parties is whether Vistaprint.com Release 5.1 qualifies as prior art under one or more paragraphs of § 102, thus anticipating the '149 patent.  (Wikner Decl. ¶ 15, Ex. 14 (Wong Rebuttal Report ¶ 42 ("On the basis of my review of Mr. Zwang's report, it is my opinion that Vistaprint.com in February 2001 . . . does not raise a genuine issue as to whether the asserted claims of the '149 patent are anticipated or rendered obvious.")).)

A.   **Vistaprint.com Anticipates the '149 Patent Because It Was in Public Use More Than One Year Before the Filing Date**

Release 5.1 is prior art under 35 U.S.C. § 102(b) because was in public use prior to the critical date.  An invention is ineligible for patenting if its use—including third-party use—before the critical date was either accessible to the public or commercially exploited.  *See Am. Seating Co.*, 514 F.3d at 1267; *Adenta*, 501 F.3d at 1371.  "Actual use, knowledge, or awareness on the part of consumers, either general or specialized, is not required, and for the purposes of Section 102(b), 'it is not public knowledge of [an] invention which precludes patenting, but [rather] a public use . . . of it."  *Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 87 F. Supp. 2d 258, 269 (S.D.N.Y. 2000) (citation omitted).

1.   **Vistaprint.com Was Publicly Used Before the Critical Date**

Vistaprint.com was in public use before the March 21, 2001, critical date.  Vistaprint.com has been in commercial use since at least May 2000, when the website and the VistaStudio software became publicly accessible.  (Wikner Decl. ¶ 4, Ex. 3 (Coursol Dep. at 21:7-23).)  In its first six months of operation, Vistaprint.com was used by over 50,000 paying customers.  (Wikner Decl. ¶ 11, Ex. 10.)  On February 26, 2001, Release 5.1, which allowed customers to upload PDL files for use in documents created on Vistaprint.com, was introduced.  (Coursol Decl. ¶ 8, Ex. 1; Wikner Decl. ¶ 6, Ex. 5 (Tsykora Dep. at 41:10-13; 42:12-43:8); *id.* ¶ 5, Ex. 4 (Pai Dep. at 27:12-28:9).)  Between the launch of Release 5.1 and the critical date, over 2,000 customer orders that included uploaded images were received by Vistaprint.com.  (Stevenson Decl. ¶¶ 5-6, Ex. 1.)  These orders, placed using Vistaprint's publicly accessible website under no obligation of confidentiality, prove that Release 5.1 of the Vistaprint.com system was in public use.  *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005) (commercial exploitation is "a clear indication of public use"); *see also Cummings*, 716 F. Supp.

2d at 334 (denying motion to strike declaration authenticating and explaining spreadsheets evidencing sales of accused product prior to critical date).   ColorQuick has no evidence to credibly dispute that the relevant portions of the Vistaprint.com system were in the public's possession prior to the critical date.  *See Lockwood*, 107 F.3d at 1570; *Iovate Health Scis., Inc.*, 2008 WL 7842052, at *4-5.

### 2. As a Matter of Law, Vistaprint.com Discloses All Limitations of the Asserted Claims

ColorQuick accuses all versions of Vistaprint.com of infringing all asserted claims of the '149 patent.  (Wikner Dec. ¶ 3, Ex. 2 (ColorQuick Supp. Contentions, Ex. A); *id.* ¶ 9, Ex. 8 (Wong Supp. Expert Report at 1-4); Compl. ¶¶ 10-11.)  Although it is Vistaprint's burden of proving that pre-critical date public use of Vistaprint.com anticipates the patent under § 102(b), the Federal Circuit has held that this burden is satisfied as a matter of law by the patentee's allegation that the accused product infringes the patent-in-suit.  *See Vanmoor*, 201 F.3d at 1366; *Evans Cooling Sys., Inc.*, 125 F.3d at 1451.

In *Vanmoor*, the court noted that "the entire basis of the patent infringement claim is Vanmoor's (the patentee's) contention that the accused cartridges infringe the [patent]." *Vanmoor*, 201 F.3d at 1366 (citing *Evans Cooling Sys., Inc.*, 125 F.3d at 1451).  "[Defendants] denied that the accused cartridges infringe but have, 'by conceding infringement for purposes of the summary judgment motion and [their] on sale defense, properly pled in the alternative." *Id.* Just as in *Vanmoor*, ColorQuick's sole allegation is that Vistaprint.com, both in its current (using Advanced SSR Studio) and former (Old Studio) form, infringes.  (Wikner Dec. ¶ 3, Ex. 2 (ColorQuick Supp. Contentions, Ex. A; *id.* ¶ 9, Ex. 8 (Wong Supp. Expert Report at 1-4)); *see also Cummings*, 716 F. Supp. 2d at 332-33 (finding plaintiff's general accusation of infringement against a product covered all such products, including those prior to the critical date).

ColorQuick's Supplemental Amended Infringement Contentions point to both pre- and post-critical date documents as evidence that Vistaprint.com infringes the claimed method.  (*See, e.g.*, Wikner Decl. ¶ 3, Ex. 2 (ColorQuick Supp. Contentions, Ex. A at 9).)  Vistaprint, for purposes of this summary judgment motion and its defense under § 102(b), concedes that its product infringes as alleged by ColorQuick.  Accordingly, there is no genuine dispute of fact that Vistaprint.com meets all claim limitations, and the '149 patent is invalid as a matter of law.

## B.   Vistaprint.com Anticipates Because It Was Made in the United States Before the Invention Claimed

Release 5.1 also anticipates because it was made and practiced the claimed process in the United States before the date of invention by Jeremy Herr, the named inventor of the '149 patent, and was not abandoned, suppressed, or concealed.  *See* 35 U.S.C. § 102(g)(2).  It is undisputed that Mr. Herr first conceived of the inventions of the '149 patent *after* the critical date of March 21, 2001, and developed his first prototype by approximately August 2001.  (Wikner Decl. ¶ 12, Ex. 11 (ColorQuick Resp. Interr. No. 1 (conceived "by May 2001"); Wikner Decl. ¶ 7, Ex. 6 (Herr Dep. at 128:25-129:3).)  "Making" an invention under § 102(g) requires either actual reduction to practice or constructive reduction to practice by filing a patent application.  *Katz*, 687 F.2d at 454.

### 1.      Vistaprint Made Vistaprint.com in the U.S. Prior to Mr. Herr's Invention

An invention is "made" when a working prototype that performs the process is constructed, although "there is certainly no requirement that an invention, when tested, be in a commercially satisfactory stage of development."  *DSL Dynamic Scis., Ltd.*, 928 F.2d at 1126.  As illustrated in the discussion above with respect to § 102(b), Vistaprint.com was unquestionably "made in the United States" prior to the invention by Mr. Herr.  After moving operations to the United States from France in January 2000, Vistaprint began developing its

web-to-print technology, which was introduced as Vistaprint.com in May 2000.  (Wikner Decl. ¶ 4, Ex. 3 (Coursol Dep. at 16:6-11; 21:7-11); Coursol Decl. ¶ 5.)   Beyond a mere working prototype, Vistaprint.com was a commercially successful system used by over 50,000 paying customers the year before Mr. Herr developed his initial prototype.  (Wikner Decl. ¶ 11, Ex. 10.) Release 5.1 of Vistaprint.com, which added the ability to upload PDF image files in February 2001, was used to complete at least 2,000 paid orders from the time of its launch on February 26, 2001, through March 21, 2001.  (Stevenson Decl. ¶¶ 5-6, Ex. 1.)  Such evidence is undisputed and more than sufficient to show that Vistaprint made a working embodiment of the invention well in advance of Mr. Herr's alleged August 2001 invention date.

>    **2.      Vistaprint's Public, Commercial Use of Vistaprint.com Negates Any Intention to Abandon, Suppress, or Conceal the Invention**

Vistaprint did not abandon, suppress, or conceal the invention.  A prior invention is not abandoned, suppressed, or concealed if the prior inventor took affirmative steps to make the invention publicly known, which requires only "that the public enjoy the *benefits* or use of the prior invention."  *Friction*, 658 F. Supp. at 1013-14; *Dunlop*, 524 F.2d at 37.  "Public use of the invention, without disclosing the details of it, is sufficient to negate any intention to abandon, suppress or conceal."  *Id.*  "Engaging in activities designed to bring about public *or commercial use of the invention* is also sufficient."  *Friction*, 658 F. Supp. at 1013-14 (emphasis added).

The commercial use of Release 5.1 on February 26, 2001, eliminates any inference that Vistaprint abandoned, suppressed, or concealed the process of the claimed invention.  By using the claimed process, as asserted by ColorQuick, in offering and preparing print products for sale on Vistaprint.com, Vistaprint made the invention publicly known and caused the public to benefit from the products produced using the process.  (*See* Stevenson Decl. ¶¶ 5-6, Ex. 1; *see generally* Section VI.A above.)  This is all that is required to avoid a finding of abandonment.

*See, e.g., Dunlop*, 524 F.2d at 37; *Benedict v. Gen. Motors Corp.*, 184 F. Supp. 2d 1197, 1201-02 (N.D. Fla. 2002).

By March 2001 Vistaprint had made available on its public website white papers prepared by CAP Ventures and Raine Consulting, Inc. in July 2000, that discussed the technology of VistaStudio and Vistaprint's back-end VistaBridge systems.  (Ripper Decl. ¶¶ 5-7, Exs. 1 & 2.)   Far from suppressing or concealing its prior invention, Vistaprint both commercialized and publicly disclosed details of the technology underlying its success.  (*Id.*)

On April 25, 2000, nearly a year before the launch of Release 5.1 of Vistaprint.com, Vistaprint filed its *own* patent application that disclosed Vistaprint.com's methods and systems for managing print jobs.  (*See* Wikner Decl. ¶ 14, Ex. 13 (Keane Patent).)   By filing a patent application, Vistaprint affirmatively disclosed details of the operation of Vistaprint.com to the public.  Accordingly, there can be no genuine dispute of fact that Vistaprint did not abandon, suppress, or conceal the invention.

### 3.  ColorQuick Admits Vistaprint.com Discloses All Limitations of the Asserted Claims

The sole basis of ColorQuick's complaint is that Vistaprint.com infringes claims of the '149 patent.  Courts have held that, just as in the § 102(b) context, *Evans Cooling* and *Vanmoor* apply in the case of defenses under § 102(g) as well.  *See Teva Pharm. Indus. Ltd. v. Astrazeneca Pharms. LP*, Civ. A. No. 08cv4786, --- F. Supp. 2d ---, 2010 WL 4139043, at *8 (E.D. Penn. Oct. 20, 2010); *Benedict*, 184 F. Supp. 2d at 1200 ("Although *Vanmoor* and *Evans* involved § 102(b), their logic is equally applicable to claims of invalidity under § 102(g).").  For the same reasons discussed above, ColorQuick's categorical allegation that Vistaprint.com infringes requires "no further showing of identify of the patented and accused products."  *Benedict*, 184 F.

Supp. 2d at 1200.  Vistaprint is accordingly entitled to summary judgment of invalidity of the '149 patent claims as a matter of law.

## VII.
### CONCLUSION

ColorQuick's complaint and infringement contentions accuse all Vistaprint.com systems, including its own prior art system, of infringement.  The record contains no factual dispute that Vistaprint.com was made in the United States prior to the invention by Mr. Herr or that Release 5.1 of Vistaprint.com was commericalized and publicly used prior to the critical date. Accordingly, Vistaprint is entitled to summary judgment of invalidity as a matter of law.

DATED:  March 14, 2011

COOLEY LLP

*/s/ Brian P. Wikner*
Thomas J. Friel
Matthew P. Gubiotti
Brian P. Wikner
COOLEY LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
tfriel@cooley.com
mgubiotti@cooley.com
bwikner@cooley.com
(650) 843-5000

Christopher Campbell
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190
ccampbell@cooley.com
(703) 456-8553

Charles Ainsworth, Esq.
Parker, Bunt & Ainsworth, P.C.
100 E. Ferguson, Ste. 1114
Tyler, TX  75702
charley@pbatyler.com
Tel: (903) 531-3535
Fax: (903) 533-9687

**ATTORNEYS FOR DEFENDANT AND
COUNTERCLAIMANT VISTAPRINT
LIMITED**

CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed VistaPrint Limited's MOTION

FOR SUMMARY JUDGMENT OF INVALIDITY with the clerk of court for the United States

District Court, Eastern District of Texas, using the electronic case filing system of the court. The

electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of

record who have consented in writing to accept this Notice as service of this document by

electronic means.

/s/ Brian P. Wikner
Brian P. Wikner