IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| COLORQUICK, L.L.C., § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CASE NO. 6:09cv323 LED-JDL |
| § | |
| VISTAPRINT LIMITED and § | JURY DEMANDED |
| OFFICEMAX INCORPORATED, § | |
| § | |
| Defendants. § | |
| § | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Before the Court is Vistaprint Limited's Motion for Summary Judgment of Non-Infringement (Doc. No. 132). The matter has been fully briefed. (Doc. Nos. 142, 157 & 163). The Court heard argument on the Motion on May 13, 2011. For the reasons stated below, the Court **RECOMMENDS** that Vistaprint's Motion be **GRANTED-IN-PART** and **DENIED-IN-PART**.

BACKGROUND

Plaintiff Colorquick, L.L.C. ("Colorquick") alleges Vistaprint Limited ("Vistaprint") infringes U.S. Patent No. 6,839,149 ("the '149 patent"). The '149 patent is directed to the "preparation of production data for a print job using a still image proxy of a page description language image file." '149 patent at 1:1-4.

Colorquick asserts Claims 1-3, 7, and 9-12 against Vistaprint.[1] Vistaprint moves for

---

[1] Colorquick dismissed with prejudice its allegation that Vistaprint infringes claims 4-5, 25-29, 31, and 33-36 of the '149 patent. (Doc. No. 174 at 2).

summary judgment of non-infringement of Claim 1 and its dependent claims. (Doc. No. 132).

Claim 1 is set forth below as it is exemplary of the issues in dispute in Vistaprint's Motion for Summary Judgment of Non-Infringement:

> 1. An automated computer-implemented method of preparing production data for a print job, the production data including an electronic document defined by a page description language (PDL), the electronic document being stored in a PDL image file, the method comprising:
> (a) creating a still image proxy of the PDL image file;
> (b) electronically manipulating an image display of the still image proxy and recording information about the manipulations; and
> (c) using the information about the manipulations to revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy.

'149 patent at 11:45-59 (Claim 1).

## LEGAL STANDARD

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994); FED. R. CIV. P. 56(c). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial." FED. R .CIV. P. 56(e); *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987).

## DISCUSSION

**I.     "PDL Image File"**

   **A.     Parties' Contentions**

Vistaprint argues that it cannot literally[2] infringe Claim 1 because it does not "revise the PDL image file" in step (c), as described in the Court's claim construction.[3] MTN AT 7. Vistaprint argues that Claim 1 requires:

   1)   a PDL image file;
   2)   a "still image proxy" created of "the PDL image file";
   3)   an image display of the still image proxy be electronically manipulated and that information about the manipulations be recorded; and
   4)   "the PDL image file" be revised using such information so as to match "the PDL image file" to manipulations made to the still image proxy.

*Id.* at 8. Vistaprint contends the claim consistently recites "*the* PDL image file," which refers to "the PDL image file" recited in step (a) of the claim. *Id.* at 8-9. Specifically, Vistaprint argues that "the PDL image file" referred to throughout the claim must be the PDL image file from which the still image proxy is created. *Id.* at 9. Thus, Vistaprint concludes, literal infringement of Claim 1 can only occur if the PDL image file revised, as described in step (c), is the *same* PDL image file used to create the still image proxy, as recited in step (a). *Id.*

Colorquick identifies two PDL image files used in Vistaprint's system. *Id.* at 10. Vistaprint contends that neither of the identified PDL image files are ever modified, changed, or revised in accordance with step (c) of Claim 1, and therefore, Vistaprint cannot literally infringe the '149 patent. *See id.* First, Vistaprint argues that any customer-uploaded PDL image files are generally

---

[2] Although Colorquick alleges infringement under theories of literal infringement and the doctrine of equivalents, RESPONSE AT 6, Vistaprint moves only for summary judgment of no literal infringement. REPLY AT 6.

[3] The Court previously construed the terms of the '149 patent in *ColorQuick L.L.C. v. Eastman Kodal Co.*, Civil Action No. 6:06cv390 (E.D. Tex, June 25, 2008) at (Doc. No. 67) ("CLAIM CONSTRUCTION"). The parties agreed to the Court's prior instructions. Thus, no *Markman* hearing was held in the current action.

3

deleted and never revised. *Id.* Likewise, Vistaprint contends that the PDL image file its PAPICS system produces from the customer-uploaded PDL image file is never revised in accordance with step (c). *Id.* at 11. Although the PAPICS-created PDL image file may be read in subsequent processes, the file is never modified to incorporate electronic manipulations made to the still image proxy. *Id.* Instead, any manipulations made to the proxy image are saved as XML instructions. *Id.* Vistaprint's DrawDocs software then reads the XML instructions and any images to be included in the design to create a new, printer-ready PDF file. *Id.* Therefore, Vistaprint concludes, Colorquick cannot meet its burden to show literal infringement. *Id.* at 12.

Colorquick responds, arguing that Vistaprint's claim construction theory was not originally pursued during the claim construction phase, and therefore Vistaprint waived its theory that "the PDL image file" recited in step (c) is the same PDL image file mentioned in step (a). RESPONSE AT 6-7. However, even if Vistaprint has not waived its argument, Colorquick contends Vistaprint's theory is erroneous. Colorquick argues that the language "*a* PDL image file, the method comprising," implies a meaning of "one or more PDL image files," and further, nothing within the claims shows a clear intent by the patentee to limit "a" to one. *Id.* at 7-8 (citing *Baldwin Graphic Sys., Inc. v. Seibert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). Colorquick also notes that an embodiment in the specification describes "a PDL image" without qualifying that the embodiment is limited to a single PDL image file. *Id.* at 8 (quoting '149 patent at 2:39-41). Therefore, Claim 1 "may refer to more than one (i.e., two different) PDL files." *Id.*

In addition, Colorquick contends that neither the language of the claim, nor the Court's claim construction, require that the PDL image file mentioned in step (c) be the same PDL image file recited in step (a). *Id.* at 8-10. However, even if the PDL image file in step (c) is the same PDL

4

image file in step (a), Vistaprint still infringes. Colorquick asserts that step (c) does not require revision of the PDL image *file* used to create the still image proxy, but rather, step (c) merely requires the revision of the original PDL *image*. *Id.* at 14. Therefore, Colorquick argues, the print-ready PDL image file generated by DrawDocs is a second PDL image file of "the electronic document" that is revised to incorporate the manipulations made to the image display of the still image proxy. Thus, under this theory, Vistaprint infringes the '149 patent. *See id.* at 14-15.

In its Reply, Vistaprint argues that even if the claim construction is as Colorquick contends—that "a PDL image file" means "one or more PDL image files"—the language of steps (a) and (c) require that the PDL image file referred to in step (c) is the *same* PDL image file mentioned in step (a). REPLY AT 4. Step (a) recites "creating a still image proxy of the PDL image file." '149 patent at 11:51. Step (c) discloses "revis[ing] the PDL image file so as to match the PDL image file to the manipulations made to the image display *of the still image proxy*." '149 patent at 11:57-59 (emphasis added). Vistaprint contends that because the claim language in step (c) ties back to the "still image proxy" recited in step (a), "[t]he claim clearly contemplates that the 'revise' step is performed on the same PDL image file from which the proxy was created"; it would make little sense to revise a new PDL image file incorporating manipulations to a proxy image created from a different PDL image file. REPLY AT 5.

  **B. Vistaprint Does Not Literally Infringe Claim 1 of the '149 Patent.**

    **1. "The PDL Image File" in Step (c) Refers to the Same PDL Image File Recited in Step (a).**

The Court concludes that "the PDL image file" recited in step (c) of Claim 1 is the same "PDL image file" recited in step (a). The claim itself to discloses that the same file is involved in

5

the creation and revising steps:

> 1. An automated computer-implemented method of preparing production data for a print job, the production data including an electronic document defined by a page description language (PDL), the electronic document being stored in a PDL image file, the method comprising:
> (a) creating a still image proxy of **the PDL image file**;
> (b) electronically manipulating an image display of the still image proxy and recording information about the manipulations; and
> (c) using the information about the manipulations to **revise the PDL image file so as to match the PDL image file to the manipulations made to the image display of the still image proxy.**

'149 patent at 11:45-59 (Claim 1) (emphasis added). Although the use of the definite article "the" in step (a) refers to the antecedent phrase "a PDL image file" located in the preamble, the language of step (c) refers to the PDL image file from which the still image proxy is made, as recited in step (a).[4] The antecedent of "the PDL image file" recited in step (c) is "the PDL image file" of step (a). Further, the language of step (c) ties the PDL image file to the still image proxy mentioned in step (a). *See Creative Internet Advertising Corp. v. Yahoo!, Inc.*, 2011 WL 1522414, at * 4 (Fed. Cir. April 22, 2011) (finding that the claims required that "said end user communication message" had to contain logic to insert a background reference into the *same* message that was received and transmitted, despite the antecedent phrase, "'an end user communication message,' being broad enough to cover multiple messages.").

Moreover, Claim 1 does not differentiate between multiple PDL image files, nor does it

---

[4] The Court does not require that "a PDL image file," as stated in the preamble, be a single PDL image file. The preamble indicates that the claim may encompass multiple PDL image files. However, the subsequent claim language requires that the revised PDL image file be the same PDL image file from which the still image proxy is created.

indicate that actions are performed on multiple or different PDL image files. The patentee could have chosen to draft a claim broad enough to encompass multiple PDL image files, but did not. Because the claim language of step (c) inherently refers to the PDL image file recited in step (a), the revised PDL image file must be the same PDL image file used to create the still image proxy.

In addition, the steps recited in the method claim have a logical order. The claim language inherently dictates that step (a) must be performed before any manipulations to the still image proxy—step (b)—may occur. Further, only after any manipulations are made can the PDL image file described in step (a) be revised according to step (c). Therefore, without the PDL image file from which the still image proxy is created, the performance of steps (b) and (c) cannot occur. Thus, logic, as well as the claim language itself, requires that the revised PDL image file must be the PDL image file used to generate the still image proxy.

The specification also supports the Court's construction of Claim 1. The specification consistently discloses that the original PDL image file is the file that is revised:

> Instead, the customer manipulates the ad via a browser-based application, the manipulations are delivered back to the service bureau, and the service bureau uses automated software to revise the *original image file* based on the manipulations.
> '149 patent at 6:3-7 (emphasis added).
>
> The production server uses the physical manipulations and/or production specifications to *modify the original PDL-defined image* in a manner identical to the modifications made to the still image proxy. This process is not a conversion of the still image proxy to a PDL image (here, a JPEG image to a Postscript file). Instead, it is the use of the recorded manipulations and appended production specifications to modify the original PDL image.

'149 patent at 8:48-55 (emphasis added); *see also* ABSTRACT; 6:17-22; 6:34-35; FIG. 7. Note that the specification discloses that the manipulations described in step (b) are used to "revise" the original PDL image file, specifically, the PDL image file from which the still image proxy is created.

Although in some instances the specification identifies "the original PDL image," rather than the "PDL image *file*," the claim language consistently recites "PDL image file." Further, the cited portion of the specification notes that the "PDL image" discussed is a type of Postscript file. In addition, the parties agreed that the term "PDL image file" means "a computer *file* containing page description language (PDL) code that defines the appearance of an electronic document when printed." CLAIM CONSTRUCTION AT 31. Thus, the Court's construction necessarily rejects Colorquick's argument that all that must be revised is the original PDL *image*. *See* RESPONSE AT 14.

Accordingly, the PDL image file to be revised in step (c) of Claim 1 must be the original PDL image file used to create the still image proxy, as discussed in step (a).

### 2. Vistaprint's System Does Not Revise the PDL Image File From Which the Still Image Proxy Is Created.

For the above reasons, Vistaprint must revise the PDL image file used to create the still image proxy to literally infringe the '149 patent. According to the parties' summaries of the operation of Vistaprint's system, Vistaprint cannot literally infringe Claim 1 because it does not revise the PDL image file used to generate the still image proxy. *See* MTN AT 10-11; RESPONSE AT 14.

In its Response, Colorquick does not dispute that Vistaprint's system creates a new PDL image file that incorporates the manipulations of the image display of the still image proxy:

> Vistaprint cannot escape literal infringement of step (c) by creating a *"new printer-ready PDF computer file"* in DrawDocs. The PDF generated by DrawDocs is simply a second "PDL image file" of "the electronic document" that is revised to match the manipulations made to the image display of the still image proxy from the XML document.

RESPONSE AT 14 (emphasis added). Because the DrawDocs software creates a *new* PDL image file that incorporates the manipulations made to the image display of the still image proxy, rather than revising the original PDL image file, Vistaprint cannot literally infringe step (c) of Claim 1. Therefore, with regard to literal infringement, the Court **RECOMMENDS GRANTING-IN-PART** Vistaprint's Motion for Summary Judgment of Non-Infringement.

## II.     "Electronically Manipulating"

### A.     Parties' Contentions

In addition to its argument that it does not revise the PDL image file used to create the still image proxy, Vistaprint contends it does not directly manipulate the image display of the still image proxy, as required by step (b) of Claim 1. MTN AT 13. Essentially, Vistaprint argues that users electronically manipulate the image display, not Vistaprint. *Id.* at 14. Therefore, Vistaprint alone cannot be responsible for literal infringement of Claim 1 of the '149 patent. *See id.* at 13-15.

In response, Colorquick argues that Vistaprint's software and back-end processes electronically manipulate an image display of the still image proxy. RESPONSE AT 2. Colorquick contends that although a user initiates the modifications made to the image display, Vistaprint's software enables and implements those customer-made changes. *Id.* at 18-19.

### B.     "Electronically Manipulating" Is Not Limited to Performance By Users

The issue presented by the parties is essentially a dispute over the proper scope of the phrase "electronically manipulating." Because the parties' claims implicate a claim construction issue, the Court finds it necessary to clarify the scope of the term "electronically manipulating." *See O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

The Court disagrees with Vistaprint's construction, which requires that the "electronically

manipulating" step is directed solely toward the user. The Court concludes that it is not proper to construe the claim as excluding electronic manipulation by software, and therefore, "electronically manipulating" cannot exclude software that implements the manipulation commands initiated by the user. *See Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108,1118 (Fed. Cir. 2002) ("[A]lthough a user must activate the functions programmed into a piece of software by selecting those options, the user is only activating means that are *already present in the underlying software*." (emphasis in original)).

Further, step (b) requires "recording information about the manipulations." '149 patent at 11:54-55. In the context of the '149 patent, software, not the user, would perform the recording step. Accordingly, the Court rejects Vistaprint's claim construction excluding software manipulation and the Court **RECOMMENDS DENYING-IN-PART** Vistaprint's Motion.

## CONCLUSION

The Court has interpreted Claim 1 to require that the revised PDL image file referred to in step (c) of Claim 1 is the PDL image file used to create the still image proxy in step (a). Therefore, to literally infringe the method of Claim 1 of the '149 patent, the infringing party must necessarily revise the PDL image file used to create the still image proxy. Because Vistaprint's system does not revise the PDL image file used to generate the still image proxy, but rather creates a new PDL image file for printing, the Court **RECOMMENDS GRANTING-IN-PART** Vistaprint's Motion for Summary Judgment of Non-Infringement as it applies to literal infringement. In addition, the Court **RECOMMENDS DENYING-IN-PART** Vistaprint's Motion as it pertains to "electronically manipulating" because Claim 1 does not preclude software from electronically manipulating an image display of the still image proxy.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 17th day of May, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE